SHELTER MUTUAL INSURANCE COMPANY *v.* Arch IRVIN

91-247                                          831 S.W.2d 135

Supreme Court of Arkansas
Opinion delivered May 11, 1992
[Rehearing denied June 8, 1992.]

332

*Roy & Lambert*, by: *James M. Roy, Jr.*, for appellant.

*Odom & Elliott*, by: *Don R. Elliott, Jr.*, for appellee.

Tom Glaze, Justice. This case requires our interpreting Act 335 of 1987, codified as Ark. Code Ann. § 23-89-209 (1987), which provides that every insurer writing liability insurance in Arkansas on any motor vehicles in the state shall make available under-insured motorist coverage to their named insureds. About one year after Act 335 became effective, appellee's automobile was struck by a vehicle driven by Rebecca McClelland, who was insured by Farmers Insurance Group with a policy bearing liability limits of $25,000 per person. Appellee's total damages were $42,500, and upon receiving policy limits of $25,000 from Farmer's, appellee became underinsured in the amount of $17,500. Appellee was insured by appellant, Shelter Mutual Insurance Company, but his policy contained no under-insured motorist coverage. Nonetheless, he sued Shelter, alleging Shelter had a duty under Act 335 to offer him under-insured coverage, and it had failed to do so. Appellee asserted that such coverage in the amount of $17,500 should be implied by operation of law. The trial court agreed, and from that decision, Shelter brings this appeal.

Act 335, as codified, provides as follows:

(a) Every insurer writing automobile liability insurance covering liability arising out of the ownership, mainte-nance, or use of any motor vehicles in this state shall make underinsured motorist coverage available to the named insured, which coverage enables the insured or the in-

sured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle. Coverage limits shall be equal to the limits of liability provided by the underinsured motorist coverage to the extent the coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.

(b)    For purposes of this section, private passenger automobile liability insurance shall be defined pursuant to Sec. 23-89-301.

In reading the foregoing, the trial court concluded Shelter was required to make underinsured coverage available to appellee. The parties stipulated that neither Shelter nor its agent gave oral notice of such coverage to appellee, and Shelter never sent or conveyed any written information about the coverage to appellee or, for that matter, to any of its insureds. The court found that, while appellee's applications for motorist insurance contained the term "underinsured motorist" where optional coverages and their limits were listed, it concluded this mere printing of the term with nothing more fell short of the "shall make available to the named insured" requirement dictated by Act 335.

Until now, our court has not interpreted Act 335. The Eighth Circuit Court of Appeals, however, has done so in the case of *Edens* v. *Shelter Mut. Ins. Co.*, 923 F.2d 79 (8th Cir. 1991). There, Edens claimed entitlement to underinsured motorist benefits under a Shelter liability insurance policy issued under circumstances similar to the ones in the present case. Shelter argued it complied with the "shall make available" requirement in Act 335 (1) by providing the named insureds with insurance application forms containing a box which they could check if they wanted underinsured motorist coverage and (2) by filing rates and endorsements for such coverage with the Arkansas Insurance Commissioner.

The federal district court in *Edens* agreed with Shelter. And the Eighth Circuit, in affirming the district court, reasoned that, if the Arkansas General Assembly had intended to require more on an insurer's part, it could have specified the underinsured coverage information an insurer must provide an insured or

provided underinsured coverage that would automatically be a part of the policy unless rejected by the insured. Regarding this latter suggestion, the court pointed out the General Assembly made such an "opt-out" requirement of insurers when offering uninsured and no-fault insurance under Ark. Code Ann. §§ 23-89-403 and 23-89-202, but that legislative body made no such requirement when enacting Act 335. The court suggested this disparate treatment reflected a policy decision of the General Assembly that uninsured and no-fault insurance were considered so vital that they will be assumed to be a part of an insured's policy unless rejected, while underinsured motorist coverage was less vital or important and must merely be available for election by an insured.

First, we point out that Act 335 has been amended since the *Edens* case was decided, and the General Assembly now has provided, like in no-fault and uninsured coverage situations, insurers shall provide underinsured motorist coverage to the named insured unless such coverage is rejected in writing by the insured. *See* Acts 209 and 1123 of 1991. Thus, contrary to the court's suggestion in *Edens*, the General Assembly does equate the importance of underinsured coverage with uninsured and no-fault coverages. Of course, Act 335 contained no "opt-out" requirement for underinsured coverage when appellee incurred his damages in 1988, but Acts 209 and 1123 amending Act 335 dispel any notion that the General Assembly considered uninsured coverage less vital than no-fault or uninsured coverages.

The General Assembly also reflected the significance it attached to this new optional underinsured coverage by adopting such coverage by separate enactment, Act 335, mandating insurers to make that coverage available to insureds. Other optional coverages such as collision, comprehensive, fire, theft and windstorm are not statutorily mandated coverages.

If any doubt or ambiguity exists as to the meaning of the "shall make available" language in Act 335 (and from the parties' respective and well-reasoned arguments, we believe there is), the General Assembly clearly set out in the preamble of the Act that it intended the enactment to require insurers to *offer* underinsured motorist coverage to insureds purchasing automobile liability policies. Shelter argues, like in *Edens*, that it met this

requirement by listing underinsured coverage along with other optional coverages on Shelter's application forms. Shelter argues that appellee and his wife, as insureds, signed these applications and had a duty to educate themselves concerning this insurance. *Continental Cas. Co.* v. *Didier*, 301 Ark. 159, 783 S.W.2d 129 (1990). While we agree with the principle announced in *Didier*, we fail to see its relevancy here.

. The General Assembly clearly mandated insurers to offer underinsured coverage to insureds not only because such coverage was new and insureds were generally unfamiliar with this coverage, but also because the General Assembly considered underinsured coverage significant and vital enough to require by law that this new coverage be offered insureds. In amending Act 335 by Acts 209 and 1123 of 1991, the General Assembly attempted to ensure no misinterpretation would result so as to exclude insureds from receiving these new and important benefits provided by underinsured coverage. As previously mentioned, that legislative body had already emphasized the importance of such coverage by requiring issuers to offer it to insurers in the original version of Act 335.

In the present case, appellee offered proof that the application forms signed by him and his wife were furnished by Shelter but that Shelter's agents never discussed underinsured coverage with them. Shelter stipulated that neither it nor its agent orally notified appellee of such coverage; nor did Shelter or its agents furnish appellee with any written material concerning the coverage between the effective date of Act 335 and the date of the accident. Based on these facts, we believe the trial court was correct in holding Shelter failed to offer underinsured coverage as intended and in the manner required by Act 335.

Because Shelter failed to make underinsured coverage available, we also agree with the trial court's implying such coverage by operation of law. Appellant contends that because the General Assembly has not imposed a specific penalty for non-compliance, none should be imposed as a matter of law.

Many jurisdictions have implied underinsured motorist coverage by operation of law when the insurer violated its statutory duty. *Tucker* v. *County Mut. Ins.*, 125 Ill. App. 3d 329, 465 N.E.2d 956 (1984); *Siebels* v. *American Family Mutual*

*Ins.*, 374 N.W.2d 220 (Minn. 1985); *Holman* v. *All Nation Ins. Co.*, 288 N.W.2d 244 (Minn. 1980); *Blizzard* v. *State Farm Automobile Ins. Co.*, 738 P.2d 983 (Or. App. 1987); *Dewart* v. *State Farm Mut. Auto. Ins. Co.*, 370 S.E.2d 915 (S.C. App. 1988); *Bias* v. *Nationwide Mut. Ins. Co.*, 365 S.E.2d 789 (W. Va. 1987).

We believe such a remedy is likewise appropriate in the situation before us. In so holding, we refer to that part of Act 335 which provides the underinsured coverage required is to enable the insured to recover from the insurer the amount of damages for bodily injury to which the insured is legally entitled from the operator of another motor vehicle. Considering the facts and stipulations before the trial court, we affirm its award of $17,500 which is consistent with the coverage that Shelter should have offered appellee and the losses he sustained.

For the reasons above, we affirm.