524

AMERICAN NATIONAL PROPERTY AND
CASUALTY COMPANY *v.* Oma Gillean ELLIS

93-643                                       868 S.W.2d 469

Supreme Court of Arkansas
Opinion delivered January 18, 1994

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Bruce Munson,* for appellant.

*Dodds, Kidd, Ryan & Moore*, by: *Robert T. James*, for appellee.

DAVID NEWBERN, Justice. In *Lucky* v. *Equity Mutual Ins. Co.*, 259 Ark. 846, 537 S.W.2d 160 (1976), we held that when the parties to an insurance contract agree to a policy endorsement which has the effect of substituting coverage of one automobile for that of another the transaction constitutes new insurance, "delivered or issued for delivery in this State." The effect of the decision was to require insurers, pursuant to a statute now codified as Ark. Code Ann. § 23-89-403(a) (Repl. 1992), to offer uninsured motorist coverage to the insured upon the event of substituting vehicles even though the insured had previously rejected such coverage.

At the time the *Lucky* case was decided, subsection (b) of §23-89-403 provided an insured could reject the uninsured motorist coverage the insurer was required to offer pursuant to subsection (a). In the legislative session following the decision

in the *Lucky* case, the General Assembly added these words to subsection (b), "and this rejection shall continue until withdrawn in writing by the insured." Act 532 of 1977. The question now before us is whether the addition of those words to the statute changed the law as we espoused it in the *Lucky* case. We hold it did not.

Beginning in 1986, American National Property and Casualty Company (American), the appellant, insured a vehicle belonging to Oma Gillean Ellis, the appellee. The original policy issued to her, effective 11-11-86, covered a 1976 Ford Granada, and it included uninsured motorist coverage. The renewal of that policy, effective 5-11-87, was identical except that additional coverage for incidents involving underinsured motorists was added, effective 5-12-87. Ms. Ellis thereafter signed a document waiving both uninsured and underinsured motorist coverage. An amended declaration, effective 11-11-87, reflects the change in coverage and the extension of the policy to 5-11-88.

Nothing in the record before us shows that there was any coverage for the period from 5-11-88 to 11-11-88. There is a premium notice which indicates payment was due 5-11-88, but nothing in the record shows that the premium was paid or continuation of coverage was otherwise obtained.

The next declaration in the record covers the period from 11-11-88 to 5-11-89 and shows a change in vehicles to a 1980 Mercury Zephyr. The final declaration, covering the period from 5-11-89 to 11-11-89, made no change in coverage. The policy number was the same on each declaration.

Ms. Ellis was involved in an accident with an uninsured motorist on 10-29-89. Her claim for uninsured motorist benefits was denied on the basis of her 1987 rejection of the coverage. She sought a declaratory judgment that the substitution of vehicles on the policy amounted to "delivery" of a new policy and therefore should have been accompanied by an opportunity for her to accept or reject uninsured motorist coverage. After discovery, both parties moved for summary judgment. The Chancellor concluded coverage of the substituted vehicle was a new contract requiring American to offer uninsured motorist coverage again. Absent such an offer and rejection, coverage was provid-

ed because § 23-89-403 requires it unless it has been rejected by the insured.

The statute provides:

23-89-403. Bodily injury coverage required.

(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto and is not less than limits described in 27-19-605, under provisions filed with and approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.

(b) However, the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage, and this rejection shall continue until withdrawn in writing by the insured.

American argues the language added to subsection (b) by Act 532 was intended to change the law by effectively overruling our decision in the *Lucky* case.

The Chancellor disagreed and found the amendment did not change the law. He was correct. Our decision in the *Lucky* case was that the substitution of a vehicle constituted issuance of or delivery of an insurance policy. As the Chancellor put it, although he did not rely on the *Lucky* decision, a new contract is entered when a new declaration occurs with respect to a substituted vehicle. If the General Assembly intended to, in effect, overrule that decision, it failed to do so because it said nothing which affects the holding of the case. We are certain the General Assembly did not intend that rejection of uninsured motorist coverage in one insurance contract be binding in a subsequent one.

Affirmed.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. When the case of *Lucky* v. *Equity Mutual Ins. Co.*, 259 Ark. 846, 537 S.W.2d 160 (1976) was decided, Section 1 of Act 464 of 1965 provided in effect that no policy of automobile liability insurance would be issued in Arkansas unless it provided coverage against losses inflicted by uninsured motorists, "provided, however, that [such] coverage . . . shall not be applicable where any insured named in the policy shall reject the coverage."

Soon after the decision in *Lucky* v. *Equity Mutual Ins. Co.*, supra, the legislature amended Act 464 by adding the following language to Section 1 "and such rejection shall continue until withdrawn in writing by the insured."

Since we must presume the legislature had *Lucky* v. *Equity Mutual Ins. Co.* in mind when it adopted Act 532 [*Merchants' Transfer & Warehouse Co.* v. *Gates*, 180 Ark. 96, 21 S.W.2d 406 (1929)], and to have acted with reference thereto [*Lumberman's Mutual Casualty Co.* v. *Moses*, 224 Ark. 67, 271 S.W.2d 780 (1954)], it seems implausible to further assume its intent was not to correct what it deemed an erroneous construction of Act 464. If there is an intent consistent with the holding in *Lucky*, it doesn't come readily to mind. On that basis I believe the appellant was entitled to summary judgment.