**Druzella WARFORD, Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. (STATE FARM INSURANCE COMPANIES), Appellee.**

No. 95–1238.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1995.

Decided Nov. 6, 1995.

---

Raymond Carroll Smith, Fayetteville, AR (argued), for appellant.

James M. Roy, Jr., Springdale, AR (argued), for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HENLEY, Senior Circuit Judge.

Druzella Warford appeals from a judgment of the district court[1] entered in favor of State Farm Mutual Automobile Insurance Company (State Farm). *Warford v. State Farm Mut. Auto. Ins. Co.*, 871 F.Supp. 1085 (W.D.Ark.1994). We affirm.

## I.

In September 1987, Warford insured a 1976 AMC Hornet with State Farm. At that time, Warford executed a form acknowledging that State Farm had offered underinsured motorist (UIM) coverage, but that she "reject[ed] the coverage entirely." In February 1988, the coverage of the Hornet was transferred to a 1973 Chevrolet Impala and in August 1988 coverage on the Chevrolet was transferred to a 1988 Honda Accord. Declarations issued in connection with the transfers indicated that there was no UIM coverage on the Impala or Honda.

In April 1992, Warford was driving the Honda when it was hit by another vehicle, whose driver was at fault. Warford's damages were in excess of the driver's liability coverage, and she sought UIM coverage from State Farm. State Farm denied coverage.

Warford then filed an action in state court, claiming that UIM coverage should be im-

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

plied by operation of law because State Farm breached a statutory duty to offer her coverage and obtain a written rejection each time she substituted vehicles, citing Ark Code Ann. § 23–89–209 (1987). State Farm, on the basis of diversity jurisdiction, removed the case to federal district court and moved for summary judgment, asserting that it had complied with the UIM statute. The district court agreed with State Farm and this appeal followed

## II.

### A.

■■■ We review the district court's grant of summary judgment de novo. *Grossman v. Dillard Dep't Stores, Inc.,* 47 F.3d 969, 971 (8th Cir.1995). Giving Warford the benefit of every reasonable inference, we decide whether there is any genuine issue of material fact and whether State Farm is entitled to judgment as a matter of law. *Id.* In this diversity case, we must also decide what the Arkansas Supreme Court "would probably hold were it to decide the issue[s]" raised in this appeal. *Farr v. Farm Bur. Ins. Co.,* 61 F.3d 677, 679 (8th Cir.1995).

### B.

■■ The UIM statute in effect at the time Warford first contracted with State Farm in 1987 provided that "[e]very insurer ... shall make underinsurance motorist coverage available." Ark.Code.Ann. § 23–89–209 (Supp.1987). However, in 1991 the statute was amended to provide:

> Every insurer ... shall provide underinsurance motorist coverage unless rejected in writing by a named insured. The notice to policyholders regarding the right to reject coverage required in this section applies to policies issued after February 21, 1991, or the first renewal after February 21, 1991, of an existing policy unless the coverage has been rejected in writing prior to February 21, 1991, by a named insured of an existing policy. After a named insured ... rejects underinsured motorist

coverage, the insurer ... shall not be required to notify any insured in any renewal, reinstatement, substitute, amended, or replacement policy as to the availability of such coverage.

*Id.* § 23–89–209(a) (Repl.1992). If an insurer fails to comply with the statute, a court may imply UIM coverage by operation of law. *Shelter Mut. Ins. Co. v. Bough,* 310 Ark. 21, 834 S.W.2d 637, 639 (1992).

■■■ Warford argues that the 1987 statute is applicable and that coverage should be implied because State Farm had a statutory duty to offer UIM coverage and obtain a written rejection in February and August of 1988 when it agreed to substitute vehicles. She relies on *Lucky v. Equity Mut. Ins. Co.,* 259 Ark. 846, 537 S.W.2d 160 (1976), and *American Nat'l Prop. & Cas. Co.,* 315 Ark. 524, 868 S.W.2d 469 (1994), two cases involving the uninsured motorist (UM) coverage. In *Lucky,* the UM statute at issue provided that "[n]o automobile liability insurance ... shall be delivered or issued for delivery ... unless [UM] coverage is provided." Ark. Code Ann. § 66–4003 (Repl.1966). Although the statute further provided that coverage "shall not be applicable where any insured named in the policy shall reject the coverage[,]" *id.,* the court held that an endorsement covering a substitute vehicle constituted a policy "delivered or issued for delivery" and reasoned that an insurer had to offer UM coverage upon substitution of vehicles even if an insured had previously rejected coverage. 537 S.W.2d at 161–62. In *American Nat'l,* 868 S.W.2d at 471, the court held that an amendment to the UM statute, which provided that a rejection of UM coverage "shall continue until withdrawn in writing by the insured[,]" Ark.Code.Ann. § 23–89–403(b) (Repl.1992), did not overrule *Lucky,* noting nothing in the amendment specifically addressed the case.

We need not decide the question whether, as Warford suggests, the 1987 UIM statute, or, as State Farm suggests, the 1991 statute is applicable,[2] because under either statute we believe that the Arkansas Supreme Court

---

2. We are inclined to agree with State Farm that the 1991 UIM statute, which expressly applies to policy renewals after February 21, 1991, is the

applicable law. In fact, Warford concedes that her policy was renewed after February 21, 1991.

would hold that State Farm did not have a duty to offer Warford UIM coverage in 1988 after she rejected coverage in writing in 1987. As to the 1987 statute, we agree with State Farm that the state court would not extend the holding of *Lucky* to this case. As the district court noted, the language of the UM statute at issue in *Lucky* "differs significantly" from the language of the 1987 UIM statute. 871 F.Supp. at 1091. *Lucky* concerned statutory construction of the phrase "policies delivered or issued for delivery." *American Nat'l*, 868 S.W.2d at 470. In contrast, the 1987 UIM statute does not contain the "language on which the *Lucky* decision turned." *Warford*, 871 F.Supp. at 1091. The 1987 UIM statute did not mandate coverage for "policies delivered or issued for delivery," but only required that an insurer make UIM coverage "available." In fact, the statute did not require insurers to obtain a written rejection.

Moreover, if there is any ambiguity in the language of the 1987 UIM statute concerning an insurer's duty to offer coverage after a written rejection, we look to "subsequent legislation in the underinsured motorist area to guide us in our interpretation." *Birchfield v. Nationwide Ins.*, 317 Ark. 38, 875 S.W.2d 502, 504 (1994). *See also American Cas. Co. v. Mason*, 312 Ark. 166, 848 S.W.2d 392, 395 (1993) ("Changes to statutes made by subsequent amendments may be helpful in determining legislative intent."). Without doubt, the 1991 UIM amendments make clear that State Farm had no duty to offer Warford UIM coverage after she rejected coverage in writing in 1987. In contrast to the amendment to the UM statute at issue in *American Nat'l*, which was silent on the effectiveness of a written rejection of coverage on substitute policies, the 1991 amendments to the UIM statute expressly provide that a written rejection of UIM coverage made before February 21, 1991 is effective as to "any renewal, reinstatement, *substitute*, amended or replacement policy" issued after that date. Ark.Code Ann. § 23–89–209(a) (emphasis added). Although there is no ambiguity in the 1991 statute regarding the continued effectiveness of a written rejection of UIM coverage, we note in passing that the statute was again amended in 1993 and still provides that after an insured rejects UIM coverage in writing an insurer need not notify the insured as to the availability of UIM coverage in a substitute policy. *Id.* § 23–89–209(a)(2) (Supp.1993).[3]

## C.

■ In the alternative, Warford argues that her 1987 written rejection was ineffective because the form she signed was misleading and ambiguous. This argument is without merit. The document informed Warford that "Arkansas law requires that insurers make available underinsurance motor vehicle coverage" and explained the coverage. A checkmark is in a box next to the statement, "I have been offered Underinsured Motor Vehicle Coverage for bodily injury, with limits up to my automobile bodily injury liability limits, and I reject the coverage entirely." In addition to rejecting UIM coverage, Warford also rejected coverages for medical payments, death, dismemberment, loss of sight, and disability. Below the rejections of coverages and immediately above Warford's signature is the following statement: "I understand and agree that any rejection of the above coverages, other than the Uninsured Motor Vehicle Coverage, shall continue in effect until I request such coverage or coverages in writing." Warford does not contest that she signed the form, but argues that the rejection is ineffective because the insurance agent made the checkmark indicating rejection of UIM coverage and she did not recall reading the form before signing it. Her argument is totally without merit. It has long been the law that in the absence of fraud, a party is bound by her signature whether or not she read what she signed. *Universal C.I.T. Credit Corp. v. Lackey*, 228 Ark. 101, 305 S.W.2d 858, 860 (1957).

---

3. We note as well that after the district court's decision, the Arkansas Supreme Court decided *Ross v. United Serv. Auto. Ass'n*, 320 Ark. 604, 899 S.W.2d 53 (1995), which involves interpretation of the UIM statute. However, nothing in *Ross* affects this case. *Ross* did not concern the effectiveness of a written rejection of coverage, but the "only issue in the case [wa]s the amount of coverage that should be implied." *Id.*, 899 S.W.2d at 54.

## III.

Accordingly, the judgment of the district court is affirmed.