Alice FIMPEL v. STATE AUTOMOBILE
MUTUAL INSURANCE COMPANY

95-679                                                911 S.W.2d 950

Supreme Court of Arkansas
Opinion delivered December 18, 1995

*Nolan, Caddell & Reynolds, P.A.*, by: *Bennett S. Nolan*, for appellant.

*Hardin, Jesson, Dawson & Terry*, by: *J. Gergory Magness*, for appellee.

ROBERT L. BROWN, Justice. This appeal raises the issue of

whether a declaration of automobile insurance issued with a substituted vehicle requires a second rejection of no-fault insurance under Ark. Code Ann. § 23-89-203 (Repl. 1992). We conclude that it does, and we reverse the decision of the circuit court and remand.

On March 6, 1992, appellant Alice Fimpel entered into a contract for automobile insurance with appellee State Automobile Mutual Insurance Company. The contract covered Fimpel's 1974 Nissan B210. At the time the policy was executed, Fimpel rejected no-fault and uninsured motorist coverages. Sometime after that date, Fimpel replaced the 1974 Nissan B210 with a 1978 Oldsmobile Ninety-Eight. A six-month declaration effective March 8, 1994, and showing the 1978 Oldsmobile as a covered vehicle was issued to Fimpel by State Automobile. State Automobile did not propose no-fault coverage for the substituted vehicle, and Fimpel never withdrew her rejection of that coverage.

On July 24, 1994, Alice Fimpel was involved in an accident while driving her 1978 Oldsmobile Ninety-Eight. As a result of the accident, Fimpel incurred medical expenses in the amount of $6,417.44. On August 23, 1994, Fimpel made demand on State Automobile for payment of medical benefits under her policy of insurance. She claimed that pursuant to our decisions in *Lucky v. Equity Mut. Ins. Co.*, 259 Ark. 846, 537 S.W.2d 160 (1976), and *American Nat'l Prop. & Cas. Co. v. Ellis*, 315 Ark. 524, 868 S.W.2d 469 (1994), coverage existed despite her earlier rejection in 1992. State Automobile refused payment of the claim.

On December 13, 1994, Fimpel filed suit against State Automobile for the payment of $5,000 under Ark. Code Ann. § 23-89-202 (Repl. 1992), a 12% penalty, and attorney's fees. Fimpel then moved for summary judgment. In her brief in support of her motion, she claimed that an issued declaration by State Automobile with a substituted vehicle amounted to a delivery of a new policy, which triggered the statutory requirement that the coverage be rejected anew. She adduced *Lucky v. Equity Mut. Ins. Co., supra*, and *American Nat'l Prop. & Cas. Co. v. Ellis, supra*, as authority for her position. Because no rejection was executed by her at the time of the 1994 declaration, Fimpel maintained that coverage was implied and that she was entitled to a judgment against State Automobile under the policy as a matter of law.

State Automobile also moved for summary judgment. It argued that Fimpel could not recover her medical expenses under the policy because she had expressly rejected no-fault coverage when the policy was originally executed. The insurance carrier further argued that Fimpel's reliance on the *Lucky* and *Ellis* opinions was misplaced, as those opinions pertained to uninsured motorist coverage, which is a separate and distinct form of insurance from no-fault. Thus, those cases, according to State Automobile, were not determinative. State Automobile also urged that under the terms of the insurance contract the policy was not a new policy but a continuation of the old. The insurance contract, according to the carrier, expressly contemplated substitution of vehicles and a continuation of the same coverage on those vehicles.

The trial court granted summary judgment in favor of State Automobile and concluded that Fimpel never withdrew her rejection of no-fault insurance. The court further stated:

14. Plaintiff relies on *American National Property & Casualty Co.* v. *Ellis*, 315 Ark. 524, 868 S.W.2d 469 (1994) and *Lucky* v. *Equity Mutual Insurance Co.*, 259 Ark. 846, 537 S.W.2d 160 (1976) in order to support her request for medical injuries coverage under no-fault insurance. However, Plaintiff's reliance on said cases is misplaced because such cases deal exclusively with uninsured motorist coverage, not personal injury protection or no-fault coverage. Uninsured motorist coverage and no-fault coverage are separate and distinct types of insurance, governed by separate and distinct statutes. Consequently, as determined by the Arkansas Supreme Court in *Aetna Insurance Co.* v. *Smith*, 263 Ark. 849, 854, 568 S.W.2d 11 (1978), cases adjudicating issues involving uninsured motorist coverage are not determinative as to cases involving no-fault coverage due to the disparity between uninsured motorist and no-fault coverages.

15. Further, Plaintiff's reliance on *American National Property & Casualty Co.* and *Lucky* is misplaced in that a new insurance policy was not entered into between the parties at the time Plaintiff substituted her 1978 Oldsmobile 98 for her 1974 Nissan B210. The terms of the Auto Policy contemplate vehicle substitution in paragraph J of the

definitional section. The parties have the right to make their own contract and legal effect must be given to all provisions and language contained in an insurance contract which are not contrary to statute or public policy. *See Shelter General Insurance Co.* v. *Williams*, 315 Ark. 409, 867 S.W.2d 457 (1993); *Continental Casualty Co.* v. *Davidson*, 250 Ark. 35, 463 S.W.2d 652 (1971). Therefore, since the Auto Policy clearly anticipates the substitution of vehicles, such event does not alter, amend or modify the original contract nor does it cancel or terminate the original contract.

We agree with the trial court that the policy as originally issued with endorsements expressly provided that a substituted vehicle would have the same coverage as the vehicle it replaced. The remaining issue to be resolved, however, is whether the public policy of this State, as expressed in the applicable statutes, is contravened under these facts. More precisely, do the mandatory coverage statutes as construed by our caselaw require a second rejection of no-fault insurance when a declaration of renewal is issued which covers a substituted vehicle?

In *Lucky* v. *Equity Mut. Ins. Co., supra,* the issue was whether a policy endorsement covering a substituted vehicle constituted a delivery of insurance for purposes of the Uninsured Motorist Act. The insured rejected uninsured motorist coverage in 1966 on his 1960 Ford pickup but later bought a 1964 Ford pickup. In 1971, a policy endorsement was issued showing the substituted pickup truck, but uninsured motorist coverage was not rejected at that time. In 1973, the insured was injured in a vehicular accident. In refusing to accept the carrier's argument that one rejection sufficed for all substituted vehicles, we stated:

Such a construction should not be placed upon a public policy statute that expects uninsured motorist coverage to be issued or rejected any time automobile liability insurance is "delivered or issued for delivery in this State."

*Lucky,* 259 Ark. at 848, 537 S.W.2d at 162.

In *American Nat'l Prop. & Cas. Co.* v. *Ellis, supra,* we followed the *Lucky* decision in a case which also involved a substituted automobile and policy endorsement, but where the Unin-

sured Motorist Act had been amended in 1977 to provide that "rejection shall continue until withdrawn in writing by the insured." *See* Act 532 of 1977, now codified at Ark. Code Ann. § 23-89-403(b) (Repl. 1992). We decided in *Ellis* that the intent of the General Assembly for single rejections to apply to substituted vehicles was still not clear. We further concluded that a new contract is entered into when a new declaration occurs which covers a substituted vehicle. Accordingly, uninsured motorist coverage must be rejected at that time.

The coverage involved in the instant case is no-fault coverage which is mandated by the General Assembly, as is uninsured motorist coverage, although it is categorically different in its intent and purpose from uninsured motorist coverage. *See* Ark. Code Ann. § 23-89-202 (Repl. 1992); Ark. Code Ann. § 23-89-403 (Repl. 1992); *see also Aetna Ins. Co.* v. *Smith*, 263 Ark. 849, 568 S.W.2d 11 (1978). At the time of the accident in the instant case, a statute provided for rejection of no-fault coverage by the insured:

> (a) The named insured shall have the right to reject in writing all or any one (1) or more of the coverages enumerated in § 23-89-202.

> (b) After the rejection, unless the named insured requests coverage in writing, the coverage need not be provided in, nor supplemental to, a renewal policy.

Ark. Code Ann. § 23-89-203 (Repl. 1992).

■ Though uninsured motorist coverage and no-fault coverage have different purposes, both modes of insurance are mandated coverages which must be offered to prospective insureds. Furthermore, both coverages may only be rejected by the insureds. We have construed the Uninsured Motorist Act in the *Lucky* and *Ellis* cases to require a rejection of that mandatory coverage when a new declaration occurs which includes a substituted automobile. We see no reason why that construction should not apply to a second category of mandatory automobile insurance — in this case, no-fault coverage — as well.

■■ It is true that § 23-89-203 in 1994 provided that a rejection will be effective for policy renewals, but that language does not precisely embrace renewals when vehicles have been

substituted. Had the General Assembly desired to expand the single-rejection concept to substituted vehicles as well as to simple renewals of existing coverage, it could easily have done so. But it had not done so in 1994. We have stated that when an insurance statute is imprecise, it should be construed against the insurance company. *See Ross* v. *United Serv. Auto. Assoc.*, 320 Ark. 604, 899 S.W.2d 53 (1995). That principle easily applies to the case at hand. In sum, the 1978 Oldsmobile Ninety-Eight was included in the 1994 declaration sent to Fimpel prior to the accident in question. This equated to delivery of a new policy on the substituted covered vehicle, and a rejection of no-fault insurance was required at that time. Failure to obtain a rejection of the coverage with respect to the 1978 Oldsmobile Ninety-Eight results in no-fault coverage being in effect in 1994 pursuant to § 23-89-202.

■■ We are cognizant of the fact that the General Assembly amended section (b) of § 23-89-203 by Act 527 of 1995 to read in part:

> (b) After a named insured or applicant for insurance rejects this coverage, the insurer or any of its affiliates shall not be required to notify any insured in any renewal, reinstatement, substitute, amended, or replacement policy as to the availability of such coverage.

We are further aware that Act 527 amended the Uninsured Motorist Act as well and carried with it an Emergency Clause that found that present insurance laws should be *clarified* with regard to notifying insureds of no-fault and uninsured motorist coverage when there is a substitution of coverage. Subsequent Acts amending existing statutes may in certain instances clarify the original intent of the General Assembly in those earlier statutes. *See Pledger* v. *Baldor Int'l, Inc.*, 309 Ark. 30, 827 S.W.2d 646 (1992); *Nixon* v. *H & C Elec. Co.*, 307 Ark. 154, 818 S.W.2d 251 (1991); *Nathaniel* v. *Forrest City Sch. Dist. No. 7*, 300 Ark. 513, 780 S.W.2d 539 (1989). It would, however, be patently unfair to sanction a legislative clarification of a preexisting statute when this court has previously construed the effect of mandatory coverage on substituted vehicles contrary to the purported clarification. Insureds and their representatives are entitled to rely on our decisions interpreting existing law at the time of an accident with-

out a subsequent clarification by the General Assembly which has the effect of nullifying caselaw. Fimpel was injured in the accident on July 24, 1994. We interpret § 23-89-203, as it existed on that date, in light of our decisions in *Lucky* v. *Equity Mut. Ins. Co., supra*, and *American Nat'l Prop. & Cas. Co.* v. *Ellis, supra*, respecting mandatory coverage and substituted vehicles. Because of our own construction of the effect of declarations of renewal on substituted vehicles, we decline to utilize Act 527 of 1995 as a gauge for determining prior legislative intent.

The order of the trial court is reversed, and this case is remanded for entry of a judgment consistent with this opinion and for such other proceedings as may be required.

Reversed and remanded.

JESSON, C.J., not participating.

DUDLEY, J., dissents.

ROBERT H. DUDLEY, Justice, dissenting. In March 1992, appellant Alice Fimpel purchased an automobile insurance policy from appellee State Automobile Mutual Insurance Company covering a Nissan automobile. She rejected first party no-fault coverage, did not pay a premium for the coverage, and signed a form in compliance with Ark. Code Ann. § 23-89-403 (1987) rejecting the coverage. The policy provides that, if the policyholder acquires a new vehicle, it will have the same coverage as the vehicle it replaced. Later, she replaced the Nissan with an Oldsmobile. In March 1994, the insurance company renewed the policy and the renewed policy reflected that the Oldsmobile was the covered vehicle. The insurance company did not propose no-fault coverage for the substituted vehicle. Fimpel never withdrew her rejection of the no-fault coverage, and she never paid a premium for such coverage.

On July 24, 1994, Fimpel's Oldsmobile was struck by an unidentified car which was driven by an unknown person. She was injured in the accident and incurred medical expenses of $6,417.44. She submitted a claim for first party no-fault medical coverage. The insurance company refused to pay because she had rejected the coverage when she applied for the policy in 1992.

Fimpel sued the insurance company. There was no material dispute about the facts, and both parties moved for summary judgment. The trial court granted summary judgment in favor of the insurance company because the Oldsmobile had been substituted for the Nissan, the terms of the policy provided that a substituted vehicle would have the same coverage as the original vehicle, the terms of the policy remained the same, Fimpel had rejected the coverage when she applied for the policy, and the policy was not contrary to public policy. The majority opinion reverses the trial court and holds that the insurance company must pay the claim. I dissent.

The majority opinion admits that Ark. Code Ann. § 23-89-203 provided, in 1994, that rejection was effective for no-fault policy renewals and admits that the policy provided that a substituted vehicle would have the same coverage as the vehicle it replaced. It tacitly admits that the parties to an insurance contract have the right to make their own contract and that legal effect must be given to all provisions and language contained in an insurance contract that are not contrary to a statute or public policy. *See Shelter Gen. Ins. Co. v. Williams*, 315 Ark. 409, 867 S.W.2d 457 (1993). Even so, the majority opinion holds that Fimpel's rejection did not apply to the substituted vehicle because of public policy set forth in two uninsured motorists cases, *American Nat'l Property & Casualty Co. v. Ellis*, 315 Ark. 524, 868 S.W.2d 469 (1994), and *Lucky v. Equity Mut. Ins. Co.*, 259 Ark. 846, 537 S.W.2d 160 (1976). In those uninsured motorists cases we held that, when parties to an insurance contract agree to a policy endorsement which has the effect of substituting coverage of one automobile for another, the transaction constitutes new insurance. *American Nat'l Property & Casualty Co. v. Ellis*, 315 Ark. at 524, 868 S.W.2d at 470; *Lucky v. Equity Mut. Ins. Co.*, 259 Ark. at 848, 537 S.W.2d at 162. In *American Nat'l Property & Casualty Co. v. Ellis*, we said that the holdings required insurers to offer uninsured motorist coverage to the insured when vehicles were substituted even though the insured had previously rejected such coverage. 315 Ark. at 524, 868 S.W.2d at 470.

However, the wording of the statute involving uninsured motorist coverage, which was construed in the two above cited cases and relied upon in the majority opinion, and the wording of the statute involving no-fault coverage, which is at issue in

this case, is profoundly different. Section 23-89-403(b), a part of the uninsured motorist statute discussed in the two cited cases, does not mention policy renewal. It only provides that rejection of this coverage "shall continue until withdrawn in writing by the insured." *Id.* In *American Nat'l Property & Casualty Co.* v. *Ellis*, we construed this language to mean that insurers had to offer uninsured motorist coverage to the insured in the event the insured substituted vehicles even though the insured had previously rejected such coverage. *Id.* at 524, 868 S.W.2d at 470. But, unlike the language of the uninsured motorists statute, the no-fault insurance statute in effect in 1994 provided, "After the rejection, *unless the named insured requests coverage in writing, the coverage need not be provided in, nor supplemental to, a renewal policy*." Ark. Code Ann. § 23-89-203(b) (Repl. 1992). In its ruling, the trial court astutely recognized the difference in the language of the uninsured motorist coverage statute and the no-fault coverage statute and ruled that the insured's reliance on *American National Property & Casualty Co.* v. *Ellis* and *Lucky* v. *Equity Mutual Insurance Co.* was misplaced.

Even though the above emphasized language in the no-fault coverage statute applies to both supplemental and renewal policies, the majority opinion states that it is ambiguous because the statute "does not precisely embrace renewals when vehicles have been substituted." The accuracy of this statement is questionable, but even if it should be correct and even if there is some ambiguity about the legislative intent expressed in the no-fault coverage statute in effect in 1994, it was laid to rest by Act 527 of 1995. The act specifically states that its purpose is "to clarify" the statutes "to indicate that once an insured has rejected certain automobile insurance that the insurer should not be required thereafter to notify the insured of the availability of the rejected coverage at such time as the coverage not rejected is renewed . . . [or] substituted." Act 527 of 1995, § 6 (emergency clause). It changes the wording of subsection (b) to provide as follows:

(b) After a named insured or applicant for insurance rejects this coverage, the insurer or any of its affiliates shall not be required to notify any insured in any renewal, reinstatement, substitute, amended, or replacement policy as to the availability of the coverage.

Act 527 of 1995, § 2 (to be codified as Ark. Code Ann. § 23-89-403(b)).

It is the settled law of this court that it is permissible to rely on an act that was not in effect at the time of an incident if the act is merely for clarification. *Pledger* v. *Baldor*, 309 Ark. 30, 827 S.W.2d 646 (1992); *cf. Nathaniel* v. *Forrest City Sch. Dist. No. 7*, 300 Ark. 513, 780 S.W.2d 539 (1989). It is manifest from the unmistakable language of the 1995 act that the trial court was correct in its ruling and should be affirmed.

The cardinal rule in construing and interpreting statutes is to give effect to the legislative intent. *Southwest Elec. Power Co.* v. *Carroll Elec. Coop. Corp.*, 261 Ark. 919, 554 S.W.2d 308 (1977). It is also a cardinal rule of construction that legislative intent is to be first determined from the language used in the statute. *Arkansas State Highway Comm'n* v. *Mabry*, 229 Ark. 261, 315 S.W.2d 900 (1958). The basic rule of construction and interpretation to which all other construction and interpretation guides defer is to give effect to the legislative intent. *McCoy* v. *Walker*, 317 Ark. 86, 876 S.W.2d 252 (1994). The legislative intent is clear in this case. The majority opinion refuses to acknowledge it and refuses to acknowledge the public policy set and expressed by the General Assembly. This error causes the majority to violate the separation of powers doctrine, for it is the province of the legislative branch, and not the judicial branch, to set public policy. *Arkansas Louisiana Gas* v. *Hardin*, 206 Ark. 593, 176 S.W.2d 903 (1944).