COLONIA UNDERWRITERS INSURANCE COMPANY *v.*
Darrell RICHARDSON

96-330                                    924 S.W.2d 808

Supreme Court of Arkansas
Opinion delivered July 8, 1996

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *John E. Moore* and *Julia L. Busfield*, for appellant.

*Gregg, Hart & Farris*, by: *Phillip Farris*, for appellee.

ANDREE LAYTON ROAF, Justice. This case involves an interpretation of the underinsured motorist coverage statute. Ark. Code Ann. § 23-89-209 (Supp. 1995). Appellee Darrell Richardson was involved in an accident with an underinsured vehicle. At the time of the accident, Richardson was insured by appellant Colonia Underwriters Insurance Company (Colonia). Richardson filed suit against Colonia alleging that he was entitled to underinsured motorist coverage in the amount of $25,000. The trial court granted summary judgment in favor of Richardson on the basis that he was entitled to underinsured motorist coverage by operation of

law. We reverse and remand.

The relevant facts in the instant case are not in dispute. On July 13, 1992, Richardson purchased an insurance policy for a 1982 Oldsmobile Cutlass from Colonia. At that time, he rejected underinsured motorist coverage by signing the following statement:

> I have had Underinsured Motorist Coverage explained to me and fully understand it. I reject Underinsured Motorist Coverage and understand that my policy will not contain this coverage when issued or renewed. However, I may request to add the coverage later.

Richardson was issued a policy with a term from July 13, 1992, to July 13, 1993. On November 13, 1992, Colonia issued two General Change Endorsements showing that his policy had been amended to add insurance on a 1991 Isuzu Trooper and a 1982 Datsun truck. The 1982 Oldsmobile remained on the policy after the addition of the two new vehicles.

On January 13, 1993, Richardson was injured when he was struck by a truck owned by Big "M," Inc. The liability carrier for Big "M" ultimately paid Richardson $105,000, the total limits of its policy. Richardson, however, claimed bodily injury and damages in excess of Big "M" 's insurance coverage. In March 1994, Richardson made demand upon Colonia to pay the underinsured motorist coverage; Colonia refused payment. Richardson had never been charged nor had he ever paid a premium for underinsured motorist coverage.

Richardson filed the present action against Colonia on August 19, 1994; he sought the policy limit of $25,000, a 12% penalty, interest from the date of demand, and attorney's fees. Colonia admitted that Richardson made demand for the payment of underinsured motorist coverage; however, Colonia contended that Richardson specifically rejected underinsured motorist coverage.

Subsequently, Colonia moved for summary judgment on the basis that Richardson rejected underinsured motorist coverage and, pursuant to Ark. Code Ann. § 23-89-209(2), that rejection was effective as to substitute vehicles added to his policy. In his response to Colonia's motion, Richardson asserted that any time a new vehicle is insured, a new policy is issued. Richardson asserted that he was not offered underinsured motorist coverage either at the

time that the 1991 Isuzu Trooper was insured or at the time that a 1985 Nissan truck was insured. In addition, Richardson moved for partial summary judgment on the issue of whether underinsured motorist coverage for the 1991 Isuzu Trooper should be implied as a matter of law.

On July 3, 1995, the trial court entered an order granting summary judgment in favor of Richardson. The trial court concluded that the instant case involved the addition of a vehicle to an existing policy rather than the substitution of vehicles on a policy. The trial court further concluded that Richardson's rejection of underinsured motorist coverage was not broad enough to include rejection of underinsured motorist coverage for an amendment to the policy by the addition of another vehicle. The trial court noted that the contract language simply rejected coverage for the policy when issued or renewed; the language was not broad enough to include a substituted or amended policy. Finally, the trial court found that because Richardson was not given the opportunity to reject in writing underinsured motorist coverage on the 1991 Isuzu Trooper and the 1985 Nissan truck, such coverage was implied by operation of law.

A jury trial was held regarding the issue of damages, and the jury returned a verdict in favor of Richardson in the amount of $25,000. On December 7, 1995, judgment was entered, and Richardson was awarded $25,000, prejudgment interest from the date of demand, 12% penalty, attorney's fees, costs, and expenses. On appeal, Colonia contends that the trial court erred in finding that underinsured motorist coverage was implied as a matter of law and in awarding prejudgment interest.

■ The standard for review of a summary judgment is whether the evidentiary items presented by the moving party in support of the motion left a question of material fact unanswered and, if not, whether the moving party is entitled to judgment as a matter of law. *National Bank of Commerce v. Quirk*, 323 Ark. 769, 918 S.W.2d 138 (1996). We view all proof in the light most favorable to the party opposing the motion, resolving all doubts and inferences against the moving party. *Id.* However, where the operative facts of the case are undisputed, we simply determine on appeal whether the appellee was entitled to summary judgment as a matter of law. *Hertlein v. St. Paul Fire and Marine Ins. Co.*, 323 Ark. 283, 914 S.W.2d 303 (1996).

■ Richardson obtained the initial insurance policy from Colonia in July 1992, the policy was amended in November 1992, and he was injured in January 1993. During that period, Ark. Code Ann. § 23-89-209(a), Underinsured motorist coverage, provided in part:

> Every insurer writing automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicles in this state shall provide underinsured motorist coverage unless rejected in writing by a named insured. . . . *After a named insured or applicant for insurance rejects underinsured motorist coverage, the insurer or any of its affiliates shall not be required to notify any insured in any renewal, reinstatement, substitute, amended or replacement policy as to the availability of such coverage.*

(Emphasis supplied.) We have recognized that this statute requires insurers to provide underinsured motorist coverage to the named insured unless such coverage is rejected in writing by the insured. *Shelter Mutual Ins. Co. v. Irvin*, 309 Ark. 331, 831 S.W.2d 135 (1992). It is clear that Richardson rejected underinsured motorist coverage on July 13, 1992. Thus, the question presented in the instant case is whether Colonia was required to notify Richardson of the availability of underinsured motorist coverage when he added vehicles to his policy in November 1992.

■ We have not previously considered this issue; however, we have addressed comparable issues regarding uninsured motorist coverage and no-fault coverage. In *Lucky v. Equity Mutual Ins. Co.*, 259 Ark. 846, 537 S.W.2d 160 (1976), the appellant signed a rejection of uninsured motorist coverage, and he was issued liability insurance on his 1960 Ford truck by the appellee. The appellant continued to renew the policy; however, over five years later a 1964 Ford truck was substituted for the 1960 Ford truck in the original policy. We held that when the parties to an insurance contract agree to a policy endorsement which has the effect of substituting coverage of one automobile for that of another, the transaction constitutes new insurance "delivered or issued for delivery in this State" within the meaning of the uninsured motorist statute. *See* Ark. Code Ann. § 23-89-403 (Supp. 1995); *American Nat'l Property & Casualty Co. v. Ellis*, 315 Ark. 524, 868 S.W.2d 469 (1994).

We have recognized that the effect of the decision in *Lucky* was

to require insurers to offer uninsured motorist coverage to the insured upon the event of substituting vehicles even though the insured had previously rejected such coverage. *See Ellis, supra.* At the time *Lucky* was decided, the uninsured motorist statute provided in part:

> [T]he coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.

*See* Ark. Stat. Ann. § 66-4003 (Repl. 1966). We noted that to accept the construction suggested by the appellee would permit one rejection to be effective for any and every automobile that might be substituted by the insured for the original vehicle. *Lucky, supra.*

In *American Nat'l Property & Casualty Co.* v. *Ellis,* 315 Ark. 524, 868 S.W.2d 469 (1994), we addressed the effect of an amendment to the uninsured motorist statute. The statute was amended to provide in part:

> [T]he coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage, *and this rejection shall continue until withdrawn in writing by the insured.*

(Emphasis supplied.) *See* Ark. Code Ann. § 23-89-403(b) (Repl. 1992). We held that the amendment did not change the law. We observed that if the General Assembly intended to, in effect, over-rule the *Lucky* decision, it failed to do so because it said nothing which affected the holding of the case. We stated that we were certain that the General Assembly did not intend that rejection of uninsured motorist coverage in one insurance contract be binding in a subsequent one.

Similarly, we have held that a declaration of automobile insurance issued with a substituted vehicle also requires a second rejection of no-fault insurance under Ark. Code Ann. § 23-89-203 (Repl. 1992). *Fimpel* v. *State Auto. Mut. Ins. Co.,* 322 Ark. 797, 911 S.W.2d 950 (1995). Section 23-89-203 provided for rejection of no-fault coverage by the insured, and it provided:

> (a) The named insured shall have the right to reject in writing all or any one (1) or more of the coverages enumerated in § 23-89-202.

> (b) After the rejection, unless the named insured requests coverage in writing, the coverage need not be provided in, nor supplemental to, a renewal policy.

Although uninsured motorist coverage and no-fault coverage had different purposes, we recognized that both are mandated coverages which must be offered to prospective insureds. Finally, we noted that the *Lucky, supra,* and *Ellis, supra,* cases require a rejection of the mandatory coverage when a new declaration occurs which includes a substituted automobile, and we could "see no reason why that construction should not apply to a second category of mandatory automobile insurance — in this case, no-fault coverage — as well."

In reaching our decision in *Fimpel, supra,* we recognized that the General Assembly amended Ark. Code Ann. § 23-89-203(b) to provide in part:

> (b) After a named insured or applicant for insurance rejects this coverage, the insurer or any of its affiliates shall not be required to notify any insured in any renewal, reinstatement, substitute, amended, or replacement policy as to the availability of such coverage.

*See* Act 527 of 1995. We concluded that it would be patently unfair to sanction a legislative clarification of a preexisting statute when we had previously construed the effect of mandatory coverage on substituted vehicles contrary to the purported clarification. This language, however, is nearly identical to the language found in the underinsured motorist coverage statute at issue in the instant case.

Further, an Arkansas federal district court and the Eighth Circuit Court of Appeals have addressed a similar issue involving the underinsured motorist statute. *See Warford* v. *State Farm Mut. Ins. Co.,* 69 F.3d 860 (8th Cir. 1995); *Warford* v. *State Farm Mut. Ins. Co.,* 871 F.Supp. 1085 (W.D.Ark. 1994). According to the district court, Warford was involved in an automobile accident in April 1992, and the accident was proximately caused by the negligence of the other driver. At the time of the accident, Warford had automobile insurance issued by State Farm Mutual Insurance Company (State Farm). The limits of the tortfeasor's liability coverage had been exhausted, and Warford made demand upon State Farm for underinsured motorist coverage in the amount of $50,000 contending that such coverage was implied by law in view of State Farm's failure to make such insurance available.

Warford had first obtained insurance in Arkansas on September 2, 1987, for a 1976 AMC Hornet. Warford signed a form which provided in part: "I have been offered Underinsured Motor Vehicle Coverage for bodily injury, with limits up to my automobile bodily injury liability limits, and I reject the coverage entirely." In February 1988, the insurance on the 1976 AMC Hornet was transferred to a 1973 Chevrolet Impala. In August 1988, the insurance coverage on the Impala was transferred to a 1988 Honda Accord. It was undisputed that Warford's Arkansas policy did not contain underinsured motorist coverage and that he had not paid premiums for the coverage.

According to the district court, Warford asserted that the substitution of coverage constituted new insurance under Arkansas case law, and since she did not reject underinsured motorist coverage at the time of the substitution, it was implied by operation of law. State Farm contended that the substitution of the 1973 Impala and then the 1988 Honda for the 1976 Hornet constituted either a "substitute," "replacement," or "amended policy" within the meaning of Ark. Code Ann. § 23-89-203 and required no new rejection.

In concluding that no underinsured motorist coverage was implied by operation of law, the district court stated that the language of the uninsured motorist statute construed in *Lucky, supra,* and *Ellis, supra,* differed significantly from that contained in the underinsured motorist statute. The court stated that it did not believe the holding in *Lucky* and *Ellis* extended to the underinsured motorist statute. Finally, the court held that the rejection of underinsured motorist coverage obtained from Warford in 1987 was effective and that a second or subsequent rejection was not required when a vehicle was substituted for the original vehicle.

On appeal, the Eighth Circuit affirmed the decision of the district court. *Warford* v. *State Farm Mut. Ins. Co.,* 69 F.3d 860 (8th Cir. 1995). The court concluded that the Arkansas Supreme Court would hold that State Farm did not have a duty to offer Warford underinsured motorist coverage in 1988 after she rejected coverage in writing in 1987. The court further stated that the 1991 amendments to the statute expressly provide that a written rejection is effective as to "any renewal, reinstatement, *substitute,* amended or replacement policy," and the amendments make clear that State Farm had no duty to offer Warford underinsured motorist coverage

after she rejected coverage in writing in 1987.

In the instant case, the trial court relied upon *Lucky* v. *Equity Mutual Ins. Co.*, 259 Ark. 846, 537 S.W.2d 160 (1976), and *American Nat'l Property & Casualty Co.* v. *Ellis*, 315 Ark. 524, 868 S.W.2d 469 (1994), to conclude that Richardson's existing automobile liability insurance would not have applied to the 1991 Isuzu Trooper without insurance having been "delivered or issued in this state." The court found that Richardson was not given the opportunity to reject in writing underinsured motorist coverage when the vehicle was added and that the rejection that Richardson signed was not broad enough to cover and include rejection of coverage for an amendment to the contract by the addition of another vehicle. The trial court stated that the rejection "merely rejects coverage for the policy when issued or renewed." The trial court further found that because Colonia failed to give Richardson the opportunity to purchase, or reject in writing, underinsured motorist coverage on the 1991 Isuzu Trooper, such coverage would be implied by operation of law. The trial court stated that Colonia could not rely on the statute to expand the contractual language of Richardson's rejection to include a substituted, amended, or replacement policy.

We hold, however, that the underinsured motorist coverage statute at issue makes clear that "[a]fter a named insured or applicant for insurance rejects underinsured motorist coverage, the insurer or any of its affiliates *shall not* be required to notify any insured in *any* renewal, reinstatement, substitute, *amended* or replacement policy as to the availability of such coverage." Ark. Code Ann. § 23-89-209. In the instant case, Richardson *amended* his policy to add two vehicles after he rejected underinsured motorist coverage. The *Lucky*, *supra*, and *Ellis*, *supra*, cases are simply not controlling because the uninsured motorist coverage statute contained different and much narrower language.

In addition, the trial judge mistakenly relied upon his conclusion that the rejection that Richardson signed was not broad enough to include rejection of coverage for an amendment to the contract by the addition of another vehicle. The language in the contract is simply not relevant. In order for underinsured motorist coverage to be implied by operation of law, Colonia must fail to comply with the underinsured motorist coverage statute. *See Shelter Mutual Ins. Co.* v. *Irvin, supra.* The trial court seems to have concluded that coverage may be implied by operation of law even if

Colonia is in compliance with the statute. The court, however, cannot force upon the insurance company something that is not present in the statute. *See Ross* v. *United Servs. Auto. Ass'n*, 320 Ark. 604, 899 S.W.2d 53 (1995).

■ The underinsured motorist coverage statute at issue provides that after a named insured rejects coverage, the insurer is not required to notify the insured in any amended policy as to the availability of such coverage. Richardson rejected underinsured motorist coverage when he purchased his policy, and Colonia was not required to notify him as to the availability of such coverage when his policy was amended. Therefore, there is no basis for underinsured motorist coverage to be implied by operation of law. The summary judgment in favor of Richardson is reversed; Colonia's motion for summary judgment should have been granted.

For its second point on appeal, Colonia asserts, in the alternative, that the trial court erred in awarding prejudgment interest. However, because our resolution of Colonia's first point on appeal disposes of the case, it is not necessary to address the second point.

Reversed and remanded for entry of an order consistent with this opinion.

DUDLEY, J., not participating.