# Deborah MAJORS *v.* AMERICAN PREMIER INSURANCE COMPANY

98-161                                        977 S.W.2d 897

Supreme Court of Arkansas
Opinion delivered October 29, 1998

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Gregory T. Jones* and *Elisa Masterson White*, for appellee.

ANNABELLE CLINTON IMBER, Justice. This case involves an interpretation of the underinsured motorist coverage statute, Ark. Code Ann. § 23-89-209(a) (Supp. 1997). Appellant Deborah Majors was involved in an accident with an underinsured vehicle. At the time of the accident, Ms. Majors was insured by American Premier Insurance Company. Ms. Majors filed suit against American Premier alleging that she was entitled to underinsured motorist (UIM) coverage in the amount of $25,000.00. The trial court granted summary judgment in favor of American Premier on the basis that it had obtained a written rejection of UIM coverage from the named insureds at the time the policy was originally issued, and Ark. Code Ann § 23-89-209(a) did not require American Premier to obtain an additional written rejection when the policy was amended. We affirm.

The relevant facts in the instant case are not in dispute. On August 11, 1995, the appellant's parents, Stewart and Virginia Foster, entered into a contract for automobile insurance with Ameri-

can Premier. The contract covered both Mr. and Mrs. Foster and their automobiles. The Fosters were informed of the availability of UIM coverage at the time the policy was issued. They rejected UIM coverage and executed a written waiver. In July of 1996, Mrs. Foster contacted her local insurance agent about adding her daughter, Deborah Majors, to the policy. Ms. Majors was twenty-four years old, did not live with her parents, and planned to pay for her own coverage. Mrs. Foster filled out and signed a "Change Request" form, adding Deborah Majors as an "additional operator" and her vehicle, a Nissan Stanza, to the policy. The words "same coverages" were written across the section listing the various coverage options, including UIM coverage. American Premier did not offer UIM coverage, and Mrs. Foster did not withdraw her previous rejection of that coverage. Nor did Ms. Majors request any change in the coverage extended to her.

On July 27, 1996, Deborah Majors was involved in an automobile accident with a drunk driver. As a result of that accident, Ms. Majors incurred medical expenses in the amount of $90,000.00. Ms. Majors was offered the policy limits of $50,000.00 by the other driver's insurance company. After receiving permission from American Premier, Ms. Majors settled with the other insurance company for the policy limits. She then made demand on American Premier for $25,000.00, claiming that underinsured motorist coverage existed as a matter of law because American Premier did not offer UIM coverage to her when she was added to her parents' policy. American Premier refused her demand, and on December 5, 1996, Ms. Majors filed suit against American Premier. American Premier answered and then filed a motion for summary judgment. Ms. Majors appeals the trial court's order granting American Premier's motion for summary judgment.

As we have said on numerous occasions, summary judgment is to be granted by a trial court only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Nelson v. River Valley Bank & Trust*, 334 Ark. 172, 971 S.W.2d 777 (1998). Where the operative facts of the case are undisputed, we simply determine on appeal whether the appellee was entitled to sum-

mary judgment as a matter of law. *Hertlein v. St. Paul Fire & Marine Ins. Co.*, 323 Ark. 283, 914 S.W.2d 303 (1996).

Mr. and Mrs. Foster rejected UIM coverage when they obtained the initial policy from American Premier in August of 1995. On July 2, 1996, that policy was changed to include Deborah Majors, their daughter, and her Nissan Stanza automobile. Ms. Majors was injured on July 27, 1996. During all relevant periods, Ark. Code Ann. § 23-89-209(a) (Supp. 1997), uninsured motorist coverage, provided in pertinent part:

> (a)(1) No private passenger automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicles in this state shall be delivered or issued in this state or issued as to any private passenger automobile principally garaged in this state unless the insured has the opportunity, which he may reject in writing, to purchase underinsured motorist coverage.

> (2) After *a named insured or applicant* for insurance rejects underinsured motorist coverage, the insurer or any of its affiliates shall not be required to notify *any* insured in *any* renewal, reinstatement, substitute, *amended*, or replacement policy as to the availability of such coverage.

(Emphasis added.) We have recognized that this statute requires insurers to provide underinsured motorist coverage to the named insured unless such coverage is rejected in writing by the insured. *Shelter Mutual Ins. Co. v. Irvin*, 309 Ark. 331, 831 S.W.2d 135 (1992). It is clear that the Fosters rejected UIM coverage in August 1995. The question presented in the instant case is whether the Arkansas underinsured motorist coverage statute, Ark. Code Ann. § 23-89-209(a), required American Premier to offer UIM coverage to Ms. Majors when she was added to the Fosters' policy in July 1996. We hold that it did not.

When construing a statute, we adhere to the basic rule of statutory construction, which is to give effect to the intent of the legislature. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998). The first rule in determining that intent is to construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* If the

language is plain and unambiguous, our analysis need go no further. *Id.*

It is evident from the plain language of section 23-89-209(a) that an insurance company does not have to offer UIM coverage each time that an existing policy is changed, so long as UIM coverage has previously been rejected by a named insured or applicant for insurance. Section 23-89-209(a)(2) specifically provides that once *a named insured or applicant* for insurance rejects UIM coverage, the insurer is not required to notify *any* insured about such coverage in *any* "renewal, reinstatement, substitute, amended, or replacement policy." The broad wording of this provision clearly indicates the legislature's intent to make a rejection of UIM coverage by one named insured effective as to any subsequent incarnation of the original policy that comes within the comprehensive categories listed in section (a)(2). This provision also indicates that a rejection of UIM coverage by a named insured is effective thereafter as to any person insured under that policy.

In *Colonia Underwriters Insurance Co. v. Richardson*, 325 Ark. 300, 924 S.W.2d 808 (1996), we held that the addition of two vehicles to a policy of insurance was an amendment to the policy that did not require a second and subsequent rejection of UIM coverage under the statute. We further noted that the UIM statute was clear in its provision that an insurer is not required to notify the insured in any amended policy as to the availability of UIM coverage once a named insured has rejected that coverage. *Id.*; *see also Warford v. State Farm Mutual Automobile Ins. Co.*, 871 F. Supp. 1085 (W.D. Ark. 1994).[1]

Ms. Majors contends that the holding in *Colonia* is limited to its facts, i.e., the addition of vehicles to an existing policy. Although *Colonia* did not specifically address the addition of a named insured, our interpretation of the UIM statute is governed by its clear language that *any* amendment to an existing policy of insurance does not require a second rejection. Ms. Majors also

---

[1] Our decisions in *Lucky v. Equity Mutual Insurance Co.*, 259 Ark. 846, 537 S.W.2d 160 (1976) and *American National Property & Casualty Co. v. Ellis*, 315 Ark. 524, 868 S.W.2d 469 (1994) are inapposite because the statutory language construed in those cases differs significantly from the statutory language construed herein.

argues that this case can be distinguished from *Colonia* because she is an adult paying for her own insurance and living apart from her parents. She asserts that the addition of her name to her parents' existing policy constituted a new policy of insurance. We do not agree.

■ The undisputed facts reflect that Ms. Majors was added to her parents' insurance policy as an "additional operator." American Premier's obligation to insure her arose out of her mother's written request that Ms. Majors and her vehicle be added to an existing policy. As noted by the trial court, it is apparent that Ms. Majors sought to be added to her parents' existing policy in order to obtain the benefit of a cheaper insurance rate. Clearly, Ms. Majors never intended to take out a separate insurance policy. Thus, we hold that adding Ms. Majors to her parents' existing insurance policy constituted an amendment to that policy and a second or subsequent rejection of UIM coverage was not required under Ark. Code Ann. § 23-89-209(a).

■ Ms. Majors finally contends that the trial court's interpretation of the UIM coverage statute violates public policy. It has previously been pointed out, however, that a state's public policy is best evidenced by its statutes. *Guaranty National Ins. v. Denver Roller, Inc.*, 313 Ark. 846, 537 S.W.2d 160 (1993). An insurance provision that is in accordance with a statute cannot run contrary to public policy. *Shelter General Ins. Co. v. Williams*, 315 Ark. 409, 867 S.W.2d 457 (1993). The underinsured motorist coverage statute establishes the public policy of the State of Arkansas with regard to UIM coverage. As American Premium fully complied with that statute, there has been no violation of public policy.

Affirmed.