E. C. OTTINGER, doing business as Ottinger Construction Company, Plaintiff,

v.

Lawrence BLACKWELL, Glenn F. Wallace, J. H. Crain, Harry W. Parkin and Armil Taylor, composing the Arkansas State Highway Commission, Defendants.

Civ. No. 3722.

United States District Court
E. D. Arkansas, W. D.

June 17, 1959.

Edward L. Wright of Wright, Harrison, Lindsey & Upton, Little Rock, Ark., for plaintiff.

William H. Donham, Little Rock, Ark., for defendants.

HENLEY, District Judge.

This is an action by the plaintiff to enjoin the defendants from attempting to award him a construction contract and from attempting to enforce the forfeiture on a bid bond executed by him as principal. Plaintiff also asks that the bid and bid bond submitted by him be withdrawn and terminated.

The facts are substantially undisputed and are as follows: The plaintiff, E. C. Ottinger, doing business as Ottinger Construction Company, is a citizen and resident of Tarrant County, Texas. The defendants Lawrence Blackwell, Glenn F. Wallace, J. H. Crain, Harry W. Parkin and Armil Taylor are citizens and residents of Arkansas, and are the duly appointed, qualified and acting members of the Arkansas State Highway Commission. The amount in controversy exceeds, exclusive of interest and cost, the sum of $10,000.

The plaintiff is a contractor engaged in the construction of highways and other structures, but has not been licensed as a general contractor in Arkansas as required by Ark.Stats. § 71–708. Some days prior to May 7, 1959, the plaintiff received an invitation from the Commission to bid on a highway construction project described as Job 10605, FAP 1–55–1 (33) 34, Bardstown-Hilton Grading Structures and Surfacing Frontage Roads.

On May 7, 1959, plaintiff wrote a letter to the Contractor's Licensing Board stating that he wished to apply for a license, that it be issued in the name of Ottinger Construction Company, that the Board bill him for the fee and that the Board "please notify the State Highway Department". On the same day the plaintiff also sent a letter to the Arkansas State Highway Department advising that he had made application for a license. The Contractor's Licensing Board by return mail sent forms necessary to apply for a license and also stated that the application could not be considered by the Board until it had been on file for 30 days, and further that "contractors must be licensed before bidding on projects in Arkansas".

On May 13, 1959, plaintiff submitted a written bid and bid bond to the Arkansas State Highway Commission for the performance of the job that has been described. The bid bond provided that if the bid should be accepted the plaintiff "will promptly enter into a contract for such construction work in accordance with said proposal or bid". The bids were formally opened at 10:00 A.M. on May 13, 1959. Plaintiff submitted the lowest bid of $1,329,370.55. Other bids submitted were for $1,611,254.41, $1,-639,193.80, $1,682,173.74, $1,754,498.83 and $1,758.216.88. The large disparity between plaintiff's bid and the next lowest bid caused plaintiff to think a mistake had been made and an investigation made by him revealed an error of $294,020. One of the plaintiff's employees notified the Arkansas State Highway Commission within a few hours after the bids were opened that an error had been made and for that reason requested that plaintiff's bid be disregarded. Plaintiff also sent a telegram to that effect and on the following day sent a letter confirming the request that the bid be disregarded and stating that his attorney had advised him that the Commission could not legal-

ly award the contract to him, and that he could not legally perform the same.

On May 18, 1959, the Commission wrote to plaintiff stating that it had tentatively awarded the contract to him on his bid, subject to the concurrence of the Bureau of Public Roads and the issuance of a license to the Ottinger Construction Company by the licensing board. The letter also stated that plaintiff had ten days from date thereof to sign the necessary agreements entering into the contract.

The specifications and plans from which the bid was prepared by the plaintiff contained around 300 pages listing the type of material to be used and the manner in which the work was to be performed, etc. It is the contention of the plaintiff that in submitting his bid he overlooked an addendum to one of the provisions in the specifications, thereby submitting a bid which would work financial ruin upon him and would amount to unjust enrichment of the public if he is required to accept the contract or forfeit the bid bond, and further that he would not have submitted the bid in that amount if he had known of the error at the time. It is also the contention of the plaintiff that if the defendants should attempt to award the contract to him, they would be performing an illegal, improper and unwarranted act since he is not a licensed contractor under the laws of Arkansas.[1]

The defendants deny that plaintiff made a mistake in his bid, deny that defendants would be performing an illegal act by awarding the contract to the plaintiff and also deny that this court has jurisdiction because this is in actuality a suit against the State, which is prohibited by the Eleventh Amendment to the Constitution of the United States. Defendants also filed a counterclaim for $35,000, the amount of the bid bond. Defendants contend that the bid bond is a separate and independent contract and is a stipulation of liquidated damages in lieu of actual damages caused defendants by plaintiff's failure or refusal to enter into a construction contract in accordance with his bid. It is the defendant's theory that such bond is not conditioned upon plaintiff's ability or qualifications to enter into such a contract and is in effect and purpose a guarantee that plaintiff is able and qualified to do so, and that the failure and refusal to enter into the construction contract tendered him constitutes a forfeiture.

Since, for the reasons hereinafter stated, we are convinced that the defendant's challenge to this court's jurisdiction must be sustained, we do not reach the merits of either the complaint or the counterclaim. Moreover, in view of the provisions of Ark.Stats. § 76–217,[2] we

---

1. Ark.Stats. § 71–701 provides that a contractor is defined as any person or firm who bids to construct or undertakes to construct, or has constructed any building, highway grading or any other improvement or structure in the State of Arkansas which costs $20,000 or more. Section 71–713 provides that any contractor who attempts to or submits a bid or bids to construct, or contracts to construct, or undertakes to construct a highway, grading or any other improvement or structure, "when the cost of the work to be done by the contractor, including but not limited to labor and materials, is $20,000 or more, without first having procured a license to engage in the business of contracting in this State, * * * shall be deemed guilty of a misdemeanor, and shall be liable to a fine of not less than $100.00 nor more than $200.00 for each offense, each day to constitute a separate offense". The statute further provides that: "No action may be brought either at law or in equity to enforce any provision of any contract entered into in violation of this act. The doing of any act or thing herein prohibited by any applicant or licensee shall in the discretion of the Board constitute sufficient grounds to refuse a license to an applicant or to revoke the license of a licensee."

2. This statute provides, among other things, that "the State Highway Commission shall have the power to bring suits to enforce demands of the State under this act and shall cause all suits to enforce any contract or demands arising under the provisions of the act to be brought by the Attorney General in the name of the State."

doubt that the defendants can, in any event, assert this counterclaim in an action such as this.

■ It seems clear that the Arkansas State Highway Commission is an agency of the State. It was held to be such by the Supreme Court of Arkansas in construing Article 5, Section 20 of the Arkansas Constitution, which provides that the State shall not be made a defendant in her own courts. Arkansas State Highway Commission v. Nelson Brothers, 191 Ark. 629, 87 S.W.2d 394. In Arkansas State Game & Fish Commission v. W. R. Wrape Stave Co., D.C.Ark., 76 F.Supp. 323, this court held that the Game and Fish Commission was, in effect, the State; the court perceives no controlling difference between the Game and Fish Commission and the Highway Commission as far as status as an agency of the State is concerned, and as a matter of fact, in the Wrape case the court drew an analogy between the two bodies and relied heavily upon the Nelson case, supra.

■■ Hence, if this suit is actually a suit against the Arkansas State Highway Commission, it is an action against the State and cannot be brought in federal court because there is no diversity of citizenship, Arkansas State Game & Fish Commission v. W. R. Wrape Stave Co., supra, and for the further reason that the Eleventh Amendment to the Constitution of the United States provides that a State may not be sued in the federal courts. State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 200, 49 S.Ct. 104, 73 L.Ed. 262; State of Missouri v. Fiske, 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145.

Even though an action is brought against individuals, it may be in substance a suit against the State where it seeks to restrain or otherwise affect the actions of the defendants as state officers. Worcester County Trust Co. v. Riley, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268. In that case it was stated:

" * * * generally suits to restrain action of state officials can,

consistently with the constitutional prohibition, be prosecuted only when the action sought to be restrained is without the authority of state law or contravenes the statutes or Constitution of the United States. (Citations omitted.) The Eleventh Amendment, which denies to the citizen the right to resort to a federal court to compel or restrain state actions, does not preclude suit against a wrongdoer merely because he asserts that his acts are within an official authority which the state does not confer." 302 U.S. at page 297, 58 S.Ct. at page 187.

And it has been held by the Supreme Court of Arkansas that where State officers are acting illegally or unconstitutionally, an action to restrain them from so doing is not a suit against the State. Federal Compress & Warehouse Company v. Call, 221 Ark. 537, 254 S.W.2d 319; Shellnut v. Arkansas State Game & Fish Commission, 222 Ark. 25, 258 S.W. 2d 570. The same principle has been applied in determining whether a suit brought against a federal officer is a suit against the United States. Magruder v. Belle Fourche Valley Water Users' Ass'n, 8 Cir., 219 F. 72.

■ The court is convinced that the threatened action of the defendants in awarding the contract to the plaintiff and in proceeding to enforce the penalty in his bid bond are not illegal merely because the plaintiff may have made a mistake in submitting his bid, as it appears probable that he did. This case differs from Noce v. Edward E. Morgan Co., Inc., 8 Cir., 106 F.2d 746. In that case the defendant engineer was about to commit an act involving affirmative wrongdoing on his part; more specifically, the plaintiff had submitted a conditional bid and the defendant ignored the condition and purported to award him the contract. The bid in the instant case was not a conditional bid, but simply, under the plaintiff's theory, a mistaken bid. The mere fact that the plaintiff may be able to plead his mistake as a defense if sued on his bid bond would

not make the initial action of the defendants in awarding the contract illegal or ultra vires.

■ It is contended by the plaintiff, however, that such threatened actions are illegal because he is not a licensed contractor as required by law; and he argues that this fact brings this case within the rule heretofore announced. The fallacy of this argument is that there is nothing in the statutes which indicates that before a contract can be let it is necessary that the contractor have a license, nor do the pertinent statutes characterize a contract awarded to an unlicensed contractor as illegal or void. Ark.Stats., § 71–713, simply makes it a misdemeanor for a contractor to bid, or to contract to construct improvements within the State without having obtained a license if the cost of the work equals or exceeds $20,000. While the statute says that it is a misdemeanor to *contract to construct* without having obtained a license, it does not say expressly that a contract cannot be made. In Woolfort v. Dixie Cotton Oil Co., 77 Ark. 203, 91 S.W. 306, the Court stated with regard to a statute of this kind that the tendency, in the absence of an express provision declaring the contract in question to be void, is to construe the statute strictly, thus maintaining the validity of the contract and holding that the only effect of the statute is to impose the prescribed penalties and expressed disabilities. Cf. Hicks Body Company v. Ward Body Works, 8 Cir., 233 F.2d 481, and Brace v. Gauger-Korsmo Construction Co., 8 Cir., 36 F.2d 661.

■ It is earnestly contended by the plaintiff that illegality of the actions threatened by the defendants is indicated by the provision of the statute that "no action may be brought either at law or in equity to enforce any provision of any contract entered into in violation of this act". While the plaintiff urges that this "no action" clause is applicable to actions brought by both the State and an unlicensed contractor, .it is the Court's view that when that clause is read in context and in the light of the purpose of the statute to protect the State and the public rather than the contractor, it obviously means that no action may be brought by an unlicensed contractor. A contrary construction might be highly damaging to the State and the public since an unlicensed contractor might use his own omission to obtain a license to defeat a claim for damages for incomplete or unsatisfactory performance of the contract. The Court does not feel that the Legislature intended to permit such a result.

But, even if the "no action" clause does apply to both parties, it is our opinion that the prohibition of said clause goes solely to the remedy of the parties and not to the inherent validity of the contract itself. It is familiar law that, a contract may be legal but for one or more reasons unenforceable; for example, there is nothing "illegal" about an oral contract to convey lands, it is simply rendered unenforceable by the statute of frauds.

Since, under our construction of the statutes, it is not illegal for the defendants to award the contract to the plaintiff, this is in effect an action against the State and for the reasons stated, it cannot be maintained in this court. It is the duty of the defendants, as members of the Arkansas State Highway Commission to let contracts for the construction of highways, and to restrain them from letting this contract would be a restraint on the State.

■ The construction of the statute urged by the plaintiff would be a doubtful one at best, and even if the Court were prepared, as it is not, to adopt such construction, the Court would still be hesitant to enjoin the defendants. As stated in Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610, a federal court should be reluctant to enjoin state officials from doing what they consider to be their official duty and should not do so unless the case is reasonably free from doubt.

It is therefore ordered, adjudged and decreed that this action be dismissed in its entirety without prejudice for want of jurisdiction.