QUALITY FIXTURES, INC. *v.*
MULTI-PURPOSE FACILITIES BOARD
for Pulaski County, Arkansas; Bob Russell; Sherman Tate;
Billie Ann Myers; Dr. George Mitchell; Lee Frazier;
and Hussey Seating Company

98-834                                    986 S.W.2d 865

Supreme Court of Arkansas
Opinion delivered March 25, 1999

116

*Skokos, Bequette & Billingsley, P.A.*, by: *Keith I. Billingsley* and *Jay Bequette*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Tim E. Howell, Lance R. Miller,* and *W. Christopher Barrier*, for appellee Hussey Seating Company.

ROBERT L. BROWN, Justice. This case raises one issue for our review: whether the trial court erred in granting summary judgment and dismissing the complaint of appellant Quality Fixtures, Inc., which contested the bid award for construction of seating at the Alltel Arena to appellee Hussey Seating Company. We hold that the trial court's judgment was not in error, and we affirm.

On July 15, 1997, appellee Multi-Purpose Facilities Board for Pulaski County, Arkansas (hereinafter Facilities Board) asked for bids for certain construction work at the Alltel Arena in North Little Rock. Among the bids requested was one for the contract for cast iron seating at the Arena. Two companies submitted sealed bids for this work — Quality Fixtures and Hussey. On March 10, 1998, at 2:00 p.m. the sealed bids were publicly opened by the construction manager for the Facilities Board, Paul Simonetta. Quality Fixtures's bid was $2,533,548. Hussey's bid was $2,326,976.

After the bids were opened, the parties were advised that a recommendation would be made to the Facilities Board after review of the bids, the respective bonds, and the status of the contractor's licenses. In reviewing these matters, the construction

manager learned that Hussey's Arkansas contractor's license had expired on July 31, 1997.

On March 27, 1998, Hussey approved and signed findings of fact and conclusions of law at a hearing before the Arkansas Contractors Licensing Board, in which it admitted violating Ark. Code Ann. § 17-25-103(a)(1), (3), and (5) by submitting a bid without first obtaining a contractor's license, by giving false evidence to the Licensing Board, and by submitting a bid with an expired license. Hussey paid a $10,000 penalty for violating the statute and received its renewed contractor's license on April 1, 1998. On April 9, 1998, the Facilities Board waived any deficiencies in the bid initially received from Hussey and accepted the Hussey bid as the low bid. It then awarded the seating contract to Hussey.

On April 24, 1998, Quality Fixtures filed suit against the Facilities Board and Hussey and sought an injunction against the contract award to Hussey. The complaint further asked for a court order directing that the Facilities Board award the contract to Quality Fixtures as the lowest responsible bidder.

The parties stipulated to the facts, and both Quality Fixtures and Hussey filed motions for summary judgment. In its resulting summary-judgment order, the trial court determined that the Facilities Board had not acted illegally, arbitrarily, or capriciously in awarding the contract to Hussey, and the court dismissed Quality Fixtures's complaint.

Quality Fixtures now claims on appeal that the trial court erred in granting summary judgment in favor of Hussey. It further contends that the trial court improperly segregated Hussey's illegal conduct of submitting a bid without a valid license from the Facilities Board's subsequent action in awarding the contract to Hussey. According to Quality Fixtures, without a current license, Hussey was foreclosed from bidding on the project. Quality Fixtures also argues that the bids were "considered" when the sealed bids were opened and compared on March 10, 1998, and that although the Facilities Board reserved the right to waive formalities or technicalities in the bids, it could not waive Hussey's fraudulent conduct of submitting an illegal bid. Finally, Quality

Fixtures points (1) to the Facilities Board's statement that bids would not be considered if sent by fax, and (2) to Ark. Code Ann. § 22-9-203(d) (Supp. 1997), which states that the Facilities Board shall award the contract to the "lowest responsible bidder," which was not Hussey at the time of the bid submissions due to its unlicensed status.

Two statutes seem to be particularly apposite to the issue at hand. First, there is the statute setting the license requirements necessary for a bid to be considered, which includes the necessity for a bidder to have a certificate of license from the state for its bid to be considered. *See* Ark. Code Ann. § 17-25-313 (Repl. 1995). Next, there is the award procedure for public projects, which prescribes in relevant part:

> (d) On the date and time fixed in the notice, the board, commission, officer, or other authority in which or in whom authority is vested to award contracts, shall open and compare the bids and thereafter award the contract to the lowest responsible bidder, but only if it is the opinion of the authority that the best interests of the taxing unit would be served thereby.

Ark. Code Ann. § 22-9-203(d) (Supp. 1997).

There is also a case which is relevant to our review. *See Ottinger v. Blackwell*, 173 F. Supp. 817 (E.D. Ark. 1959). In *Ottinger*, the district court held that the Arkansas statute making it a misdemeanor to contract to construct without a license (Ark. Stats. Ann § 71-713 (Supp. 1951)) did not make a contract awarded to an unlicensed contractor illegal or void.[1]

The plaintiff, Ottinger Construction Company, submitted a bid for a highway construction project while it was unlicensed. When the bids were opened, Ottinger was the lowest bid by a wide margin and later realized that it made a mistake in its bid in the amount of $294,000.[2]

---

[1] Ark. Stats. Ann. § 71-713 (Supp. 1951), was a predecessor statute to Ark. Code Ann. § 17-25-103 (Repl. 1995), and established penalties for operating without a contractor's license or giving false evidence.

[2] Under Act 1319 of 1995, codified at Ark. Code Ann. § 22-9-203(g) (Repl. 1996), a board now has the authority to reject a bid where the bid contains a scrivener error and would create serious financial loss to the bidder.

It tried to convince the Board to disregard its bid and filed a complaint to enjoin the Board from awarding it the contract because of its mistake. In doing so, Ottinger argued that its bid was illegal due to its unlicensed status. In rejecting Ottinger's argument, the district court stated that:

> The fallacy of this argument is that there is nothing in the statutes which indicates that before a contract can be let it is necessary that the contractor have a license, nor do the pertinent statutes characterize a contract awarded to an unlicensed contractor as illegal or void . . . While the statute says that it is a misdemeanor to contract to construct without having obtained a license, it does not say expressly that a contract cannot be made.

*Ottinger*, 173 F. Supp. at 821. The important point of this decision for purposes of the instant case is that the absence of a contractor's license did not render a contract award illegal or void. And while the *Ottinger* case is not precedent for this court, coming from a different jurisdiction as it does, we agree with its reasoning. Furthermore, the facts of the case before us differ from *Ottinger*. Here, Hussey had renewed its license and was in good standing by the time the bids were considered by the Facilities Board and the contract was awarded.

■ ■ In reading the relevant statutes, certain points are clear to us. According to § 17-25-313, bids will not be *considered* from parties that do not have a certificate of license. Second, it is the Facilities Board (or presumably its designee) that opens and compares the bids after submission and *thereafter* awards the contract to the lowest responsible bidder. This being the case, Hussey's bid could not have been considered by the Facilities Board until its contractor's license was in order. We believe that the trial court correctly differentiated between *submission* of bids and their opening at a time and date certain and *consideration* of the bids by the Facilities Board and the awarding of the contract. The plain meaning of the two terms and the action involved are totally different. *See* BLACK'S LAW DICTIONARY 306, 1426 (6th ed. 1990). Consideration of a bid must necessarily involve analysis, examination, and inspection. It is the Facilities Board that considers the bids and awards the contract at some point after the bids are opened. We do not read § 22-9-203(d) as necessarily contemplat-

ing an immediate award at the time the bids are opened. That, of course, would be impractical in some cases and would place the ultimate decision of awarding the contract on the person opening the bids — in this case the construction manager. It would also foreclose a review of matters such as the validity of the bid bond or scrivener errors in the bids themselves. *See* Ark. Code Ann. § 22-9-203(c)(2)(A) and (g) (Supp. 1997).

■ We believe that it would have been an easy matter for the General Assembly to state expressly and specifically that the bid of a party that does not have a contractor's license at the time of submission is void, if that was in fact the General Assembly's intent. *See, e.g.,* Ark. Code Ann. § 22-9-203(c)(2)(A) (Supp. 1997) (submitted bid is void when not accompanied by a certified check or corporate bid bond). This has not been done. Nor do the relevant statutes specifically state that the bids are to be considered and the contract awarded at the time the bids are opened and compared. Finally, the statutes do not foreclose the possibility that a contract can be subsequently awarded to a party that did not have a contractor's license at the time the bids were submitted but later corrected that deficiency prior to the contract's award. In short, the General Assembly simply has not enacted laws which give credence to Quality Fixture's theory.

■ As a consequence, we conclude that the bids were not considered by the Facilities Board for purposes of determining the lowest responsible bidder and awarding the contract until April 9, 1998. Under our reading of the statutes, nothing proscribes the Facilities Board from awarding the contract to Hussey when it did, after Hussey had satisfied the prerequisite of having its contractor's license renewed.

■ Quality Fixtures raised in oral argument the potential for abuse such as unlicensed bidders submitting their bids, ascertaining whether they are the low bid at the time the bids are opened, and then securing a license, if need be. Again, should the General Assembly wish to nullify any bid made by a bidder without a contractor's license, it can readily do so. In the matter before us, the defect in the bid at time of submission was waived by the Facilities Board and had been corrected by the time the

contract was awarded. We discern no statutory prohibition against that occurring.

█ The dissenting opinion argues that bids must be *considered* at the time they are opened and, inferentially, that the contract must be awarded at that time. Again, the relevant statutes (§ 17-25-313 and § 29-9-203(d)) do not require that. Moreover, it would be impractical to place the bidding process in such a straitjacket, for reasons already stated. What the dissenting opinion really objects to is the waiver by the Facilities Board of its requirement that a bidder have a contractor's license at the time the bid is submitted. It fell within the purview of the Facilities Board to treat an expired contractor's license as a formality, and it did so. We do not view that conduct as arbitrary and capricious.

Affirmed.

ARNOLD, C.J., dissents.

GLAZE, J., not participating.

W H. "DUB" ARNOLD, Chief Justice, dissenting. I disagree with the majority. I believe that its holding represents a contribution to the compromise of integrity of the bidding process and the contracting industry as a whole.

While the *facts* in the instant case are undisputed, what *is* in dispute is the interpretation of the word "considered" as it is used in Ark. Code Ann. § 17-25-103, the statute requiring that bidders have a current license from the Arkansas Contractors Licensing Board "before a bid will be considered." The majority obviously agreed with the trial court that a bid is not actually "considered" until the full board compares the bids and awards a contract. I disagree.

The crux of this case is the integrity of the bidding process. There is no dispute that Hussey did not have a valid license from the Arkansas Contractors Licensing Board when it submitted its sealed bid on March 10, 1998, in the amount of $2,326,976.00. In fact, Frances Kelly, Assistant Treasurer of Hussey, in a sworn affidavit dated March 9, 1998, clearly stated that Hussey was not a party to any contract and *would not bid* until such time as the appli-

cation for the license was approved. The affidavit clearly specifies that any bid submitted without a license must be *withdrawn* before the affidavit can be truthfully executed. In fact, Hussey used a false license number on its bid dated March 10, 1998.

While Hussey's failure to reinstate its license may have simply been due to a clerical error, as they asserted, I believe the trial court nevertheless improperly separated the conduct on the part of Hussey in submitting its illegal bid on March 10, 1998, from the action of the Board in awarding the contract to Hussey on April 9, 1998, *after Hussey had admitted guilt and paid a substantial fine.*

I believe the majority's interpretation of the term "considered" is improper for two reasons. To begin with, the first rule in considering the meaning of any statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language, making use of common sense. *Office of Child Support Enforcement v. Harnage*, 322 Ark. 461, 910 S.W.2d 207 (1995); *Arkansas Dept. of Health v. Westark Christian Action*, 322 Ark. 440, 910 S.W.2d 199 (1995). Although there are no Arkansas cases specifically dealing with this issue, in reviewing the plain meaning of the statute, "considered" must mean the time at which the sealed bids are initially publicly opened and compared. Any statutory construction to the contrary would contravene the core purpose of the competitive bidding process.

Other than the statutory construction, another reason I believe the court improperly construed the term "considered" is that the Multi-Purpose Facilities Board in the pre-bid meeting minutes dated March 3, 1998, basically defined the term "considered," when it used that term to note that bids by facsimile would not be "considered" at the time the bids were publicly opened. The pre-bid meeting minutes from March 3, 1998, at 1:00 p.m. state the following:

> (4) *Bids will not be considered if sent by facsimile.* Bids sent by overnight mail or express delivery must be placed and sealed in an envelope with the bid package number and project marked on the outside. This envelope then needs to be placed into an overnight envelope with the bid package and project clearly marked on the outside and sent to: Pulaski County Purchasing.

The Facilities Board itself gave the term "considered" the same plain and ordinary meaning as defined in Ark. Code Ann. § 17-25-313. The competitive bidding process requires sealed bids. To require otherwise would open the door to the inherent possibility of fraud, collusion, and other improper conduct concerning the award of public construction contract. Thus, the Facilities Board correctly required that if the bid was to be "considered," it must be received in a sealed bid package, a requirement obviously not available through facsimile transmission. The Facilities Board itself construed the term "considered" to mean at the time the bids were opened and compared on March 10, 1998 — not on April 9, 1998, after Hussey, its hand called, had paid a significant fine and admitted to illegal and fraudulent activity. It seems rather arbitrary, indeed, (and unfair) to agree to disregard one's own rules and regulations simply to accept the lowest bid, when the next lowest bidder has followed all the rules and regulations to the letter.

Further, Ark. Code Ann. § 29-9-203(d) states the following:

> On the date and time fixed in the notice, the Board, Commission, Officer or other authority in which or in whom authority is vested to award contracts, shall open and compare the bids and thereafter award the contract to the *lowest responsible bidder*, but only if it is the opinion of the authority that the best interest of the taxing unit would be served thereby. (Emphasis added.)

Obviously, Hussey was the lowest bidder, and accepting the lowest bid would be in the best interest of the taxing unit. However, the statute requires that the lowest bidder be a *responsible* bidder. By virtue of its illegal activity, requiring it to plead guilty and pay a substantial fine, it would seem that Hussey was not the "lowest *responsible* bidder," but that Quality Fixtures was.

While it is true that the Facilities Board, pursuant to Arkansas law, did reserve the right to waive formalities, Hussey's illegal (and suggestively fraudulent) actions certainly should not be considered "formalities" subject to waiver by the Facilities Board. The Arkansas Contractors Licensing Board did not retroactively grant Hussey a license. The license was effective April 1, 1998, some twenty days *after* the sealed bids had been opened and examined.

If the Facilities Board is able to act in such an arbitrary and capricious manner by disregarding its own requirements for bidders when it best suits the Board's needs, then the integrity of the bidding process is being compromised. I regret that the majority has allowed such a compromise.