The Honorable Leroy Dangeau The Honorable Tim Wooldridge State Representative House Co-Chair State Senator Senate Co-Chair Arkansas Legislative Council Arkansas Legislative Council Room 315, State Capitol Building Room 315, State Capitol Building Little Rock, Arkansas 72201 Little Rock, Arkansas 72201
Gentlemen:
I am writing in response to your joint request for an opinion concerning Act 2272 of 2005, which appropriates funds for personal services and operating expenses for the Department of Veterans Affairs ("Department") for the biennial period ending June 30, 2007. You note that Section 5 of the Act appropriates funds for personal services, operating expenses and extra help for the Veterans' Home in Fayetteville, Arkansas. You relay the following facts and pose the following questions:
 Section 9 of Act 2272 requires, in relevant part, that: "No funds shall be expended on construction or renovation of the Fayetteville Nursing Home until there is a balanced operating budget presented to the Joint Budget Committee or the Arkansas Legislative Council showing no additional general revenue will be needed for the operation of the home." [Emphasis your original].
 On June 17, the Department of Veterans Affairs presented a budget to the Arkansas Legislative Council. To balance the budget, the department proposed to accept Medicaid reimbursement as a source of income since many veterans are eligible for Medicaid benefits. The state Medicaid program reimburses health care providers for costs of health care on a matching-funds basis with federal moneys made available through the Centers for Medicare and Medicaid Services.
 1. Given that at least part of the revenues for the state Medicaid program originate as general revenues of the state, do those funds retain their character as general revenue funds when they are paid out as matching funds for federal Medicaid moneys?
 2. May the Department of Veterans Affairs include funds received through Medicaid to meet the balanced operating budget requirement of Section 9 of Act 2272 of 2005?
 3. Under Act 2272 of 2005, may funds be expended on construction or renovation of the Fayetteville Nursing Home, if the operating budget presented to the Joint Budget Committee or the Arkansas Legislative Council included Medicaid reimbursements as an additional source or income necessary to balance the budget?
RESPONSE
Each of your three questions essentially poses the same issue for resolution, i.e., whether a proposed operating budget that includes Medicaid reimbursement is consistent with Act 2272's mandate that the budget show that "no additional general revenue will be needed for the operation of the home." As a consequence, I will address your three questions together as one issue. In my opinion, the issue is largely a matter of legislative intent and, as a practical matter, is one that will be decided in the first instance by the appropriate legislative committee. When the language in question is viewed in the context of the act as a whole, however, and when applicable rules of statutory construction are applied, in my opinion a court might well conclude that a proposed operating budget relying on Medicaid reimbursement does not run afoul of the requirement in Act 2272, Section 9.
The Act in question, Act 2272 of 2005, is entitled "AN ACT to Make Appropriation for Personal Services and Operating Expenses for the Department of Veterans' Affairs for the Biennial Period Ending June 30, 2007; and For Other Purposes."[1] Sections 1 and 2 of the Act establish the various employee positions in the Department and make appropriations for the salaries and for operation of the Department. Sections 3 and 4 make appropriations for the Department's "Veterans' Home Division." Sections 7 and 8 make appropriations for the Veterans' Cemetery. The pertinent appropriation for our purposes is found in Section 5 which makes appropriations for the personal services and operating expenses of the Fayetteville Veterans' Home. Specifically, Section 5 of the Act makes $3,798,013 in total appropriations for this purpose in fiscal year 2005-2006 and 3,865,776 in fiscal year 2006-2007. These appropriations are made from the "Miscellaneous Agencies Fund Account," and include such line items as "regular salaries," "extra help," "personal services matching," and "maintenance and general operation." Section 6 of the Act authorizes extra-help positions for the Fayetteville Veterans' Home.
Section 9 of Act 2272, which contains the crucial provision about the proposed budget, is designated as "special language." Section 9 states that it is "not to be incorporated into the Arkansas Code nor published separately as special, local and temporary law." The balance of Section 9 provides as follows:
 FAYETTEVILLE VETERANS' HOME. Before funds or appropriations for the Fayetteville Nursing Home are spent, the Department of Veterans' Affairs shall present to the Joint Budget Committee or the Arkansas Legislative Council, a detailed report of the proposed project and a revised budget for operation showing there are sufficient funds for the entire operation. No funds shall be expended on construction or renovation of the Fayetteville Nursing Home until there is a balanced operating budget presented to the Joint Budget Committee or the Arkansas Legislative Council showing no additional general revenue will be needed for the operation of the home.
 Before any additional expenditures for the 2004-2005 fiscal year are spent, the Department of Veterans' Affairs shall present to the Joint Budget committee or the Arkansas Legislative Council, a detailed report of the proposed project and a revised budget for operation of the Nursing Home.
This special language therefore qualifies or conditions the appropriations made in Section 5 from the Miscellaneous Agencies Fund Account. Such conditions can be validly imposed under certain circumstances. Cf. Op. Att'y. Gen. 2001-118 (finding the creation of a "steering committee" with power to, among other things, approve budget and expenditure plans for a state program to be a "proper condition or limitation on the expenditure of the appropriated funds"). The question in this instance is whether the condition or qualification imposed will be met by presentation of an operating budget that relies upon Medicaid reimbursement. The specific issue for resolution is whether a budget that includes Medicaid reimbursement in fact shows that "no additional general revenue" will be needed for operation of the Fayetteville Veterans' Home, or, conversely, whether Medicaid reimbursement, because funded in part by state general revenues, makes the budget violate the condition contained in Section 9.
In my opinion the issue presented is largely one of legislative intent. It has been stated that "[t]he basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the General Assembly." Pugh v. St. Paul Fire Marine Ins.Co., 317 Ark. 304, 877 S.W.2d 577 (1994). See also, Citizens To EstablishA Reform Party v. Priest, 325 Ark. 257, 261, 926 S.W.2d 432 (1996). At issue is whether the General Assembly, in requiring a showing that "no additional general revenues" would be needed, intended to prohibit the requiring of any additional general revenues of the same type just appropriated in Section 5 of the Act; that is, additional direct appropriations of funds from the state's general revenues to support operation of the Home, or whether the General Assembly intended a broader prohibition, prohibiting the proposed budget from showing even any indirect reliance upon the state's general revenues to operate the Home, through, for example, reimbursement through a state-operated Medicaid program.
The resolution of the issue depends upon what was meant by "additional general revenues." It is important, in my opinion, to construe these words in the context in which they were used. It has been stated that in construing statutes and rules, the Supreme Court looks to the language under discussion in the context of the statute as a whole. Green v.Mills, 339 Ark. 200, 4 S.W.3d 493 (1999). Because Section 9 of the Act prohibits a budget showing a need for "additional" general revenues, the context in which the word "additional" was used may refer back to the type of revenues just appropriated in Act 2272. As noted above, the appropriations made in Section 5 of Act 2272 are made from the "Miscellaneous Agencies Fund Account" which is created at A.C.A. §19-5-302(10)(A) (as amended by Act 2282 and 2316 of 2005). This fund account consists of "those general revenues as may be provided by law," "nonrevenue income . . ." and "federal reimbursement. . . ." Id. Section 5 of Act 2272 therefore makes a direct appropriation of $3,798,013 from this fund account (which includes general revenues), for fiscal year 2005-2006 to support operation of the Fayetteville Veterans' Home. Section 9 of Act 2272 thereafter requires a budget showing that no "additional general revenues" will be needed for operation of the Home.
General revenues of the state are of course more broadly enumerated at A.C.A. § 19-6-201 (a section in the "Revenue Classification Law"). Such revenues include sales taxes, income taxes and a host of other enumerated revenues. See A.C.A. § 19-6-201(1) to (53) (as amended by Act 20 of 2005). It is my understanding that at least some of these revenues make their way into the Medicaid reimbursements that are paid to public nursing homes. In this regard, it is necessary to review the appropriation act for the Department of Human Services, Division of Medical Services, under which the Medicaid reimbursements for such purpose flow. Act 2273 of 2005, Section 4, contains an appropriation of $153,904,953 for "Public Nursing Home Care" for the 2005-2006 fiscal year. The relevant section, however, does not mention a discrete fund from which these amounts are drawn. It indicates only that the funds are payable from "the paying account as determined by the Chief Fiscal Officer of the State. . . ." Act 2273, § 4. This reference is presumably in accordance with A.C.A. § 19-5-104, which authorizes the Chief Fiscal Officer to "establish paying accounts on the books of the Treasurer of State and Auditor of State for making payments that are composed of funds derived from more than one (1) source." It is my understanding, although it is impossible to trace through a review of the applicable statutes, that the paying account used to make Medicaid reimbursements to public nursing homes is an account composed of funds derived from more than one source. The paying account includes revenues from a number of sources, including, according to my understanding, federal revenues; at least some revenues from the Department of Human Services Grants Fund Account; revenues from the "Medicaid Program Trust Fund" created at A.C.A. §19-5-985; Medicaid matching revenues supplied by certain providers; and "other income."
It appears that the only fund that might be classified as "general revenues" in this mixture is the revenue in the Department of Human Services "Grants Fund Account."[2] See A.C.A. § 19-5-306(10)(A) and19-5-402, as amended by Acts 2282 and 2316 of 2005. It is my understanding, however, because of the way claims are handled and the way the Medicaid paying account is supplied with revenues, that it is impossible to trace precisely the discrete revenues used to reimburse any particular Medicaid provider for an individual claim. It would be impossible to tell, therefore, whether any general revenues in fact flowed through to reimburse the Fayetteville Veterans' Home on a particular claim, although certainly, the possibility exists.
In my opinion, however, after a review of the pertinent language of Section 9 of Act 2272 and the language of the Act as a whole, a court might well hold that a proposed operating budget showing Medicaid reimbursement would not run afoul of Act 2272. As a guide in ascertaining legislative intent, the court will "often examine the history of the statutes involved, as well as the contemporaneous conditions at the time of their enactment, the consequences of interpretation, and all other matters of common knowledge within the court's jurisdiction." City ofLittle Rock v. ATT Comm., 318 Ark. 616, 888 S.W.2d 290 (1994); Mearsv. Arkansas State Hospital, 265 Ark. 844, 581 S.W.2d 339 (1979). It is reasonable to assume, in my opinion, that the use of the words "additional general revenues" refers to general revenues in addition to those just appropriated in Section 5 of Act 2272 and of a similar character and nature as those revenues just mentioned, that is a direct appropriation of general revenues to support operation of the Home. Although a strict reading of the applicable language might be said to prohibit even the more indirect, tangential receipt of any general revenues flowing through reimbursement from a separately-operated state program, I cannot conclude this more indirect receipt of funds is clearly within the intention of the prohibition.
As a final matter, I should note that A.C.A. § 20-81-105(d)(2)(B), governing the Veterans' Home in Little Rock, expressly provides that with regard to that Home, "[b]ed capacity will be limited to seventy (70), andno beds shall be designated for Medicaid payment." (Emphasis added). This provision does not apply to the Fayetteville Veterans' Home (and in fact there is no substantive, codified, legislation applicable to such home). In my opinion, this express prohibition with regard to the Little Rock
Veteran's Home lends support to the conclusion that no similar prohibition was intended for the Fayetteville Veterans' Home. If the legislature had intended any such prohibition, it would have been easy to state as much, as with A.C.A. § 20-81-105(d)(2)(B).[3] See, e.g.,Arkansas Gas Consumers v. Arkansas Public Service Commission,354 Ark. 37, 18 S.W.3d 109 (2003); Burke v. Elmore, 341 Ark. 129,14 S.W.3d 872 (2000); Quality Fixtures v. Multi-Purpose FacilitiesBoard, 337 Ark. 115, 986 S.W.2d 865 (1999); Vincent v. PrudentialInsurance Brokerages, 333 Ark. 414, 970 S.W.2d 215 (1998); andFimpel v. State Auto Mutual Insurance Company, 322 Ark. 797,911 S.W.2d 950 (1995). Of course, as a practical matter, and as noted above, the appropriate legislative committee will have an opportunity to review the matter and reflect upon the legislative intention of the applicable provision.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] With regard to the money to construct the Fayetteville Veterans' Home, see Acts 143 of 2005; Acts 50 of 2003 (1st Ex. Sess.), § 33; Acts 43 of 2003 (1st Ex. Sess.); Acts 166 of 2003, §§ 1(A) and 2(A); Acts 1009 of 2003, §§ 9, 10, and 11.
[2] The moneys in the Medicaid Program Trust Fund do not appear to be general revenues. See A.C.A. § 26-57-901; 20-10-1604; 20-13-212; and19-6-301(156)).
[3] My conclusion in Op. Att'y. Gen. 2003-292 that the Fayetteville Veterans' Home did not require a "certificate of need," relying in part on the legislative history of A.C.A. § 20-81-105 (exempting the Little Rock Veterans' Home from any such requirement), is not at odds with this conclusion. See, on this point, Op. Att'y Gen. 2005-154.