The Honorable John Threet Prosecuting Attorney Washington County Courthouse 280 North College, Suite 301 Fayetteville, Arkansas 72701
Dear Mr. Threet:
I am writing in response to your request for my opinion on the following questions:
 Is there a legal way for a county to contract for construction or renovation of county public buildings, when the value of the construction contract exceeds $20,000, without using competitive bidding? Is there a way for the county to accomplish this without violating A.C.A. § 22-9-203 and Article 19, Section 16, of the Arkansas Constitution?
RESPONSE
The answer to both of these questions is "no," in my opinion. The competitive bidding requirements under A.C.A. § 22-9-203 — the so-called "public works" law — apply to county contracts "for the making of major repairs or alterations, for the erection of buildings or other structures, or for making other permanent improvements." A.C.A. §22-9-203(a) (Supp. 2007). See also A.C.A. § 22-9-204 (Repl. 2004). Article 19, Section 16, of the Arkansas Constitution similarly requires competitive bidding on "[a]ll contracts for erecting or repairing public buildings or bridges in any county. . . ." Article 19, section 16's application to county contracts was recently confirmed by the Arkansas Supreme Court in Gatzke v. Weiss, No. 08-415, slip op. at 3 (Ark. Dec. 11, 2008) (interpreting the words "in any county" in Ark. Const, art. 19, § 16, to mean "county contracts.") I *Page 2 
am unaware of any authority for waiving these competitive bidding requirements where the project is otherwise subject to A.C.A. §§ 22-9-203
and-204.
Section 22-9-203 provides in pertinent part as follows regarding the award procedures:
 (a) No contract providing for the making of major repairs or alterations, for the erection of buildings or other structures, or for making other permanent improvements shall be entered into by . . . any county . . . with any contractor in instances where all estimated costs of the work shall exceed the sum of twenty thousand dollars ($20,000) unless:
 * * * (2) Any county . . . shall have first published notice of its intention to receive bids one (1) time each week for not less than two (2) consecutive weeks in a newspaper of general circulation published in the county in which the proposed improvements are to be made or in a trade journal reaching the construction industry.
 * * * (c)(1) All notices shall contain:
 (A) A brief description of the kind or type of work contemplated;
 (B) The approximate location thereof;
 (C) The place at which prospective bidders may obtain plans and specifications;
 (D) The date, time, and place at which sealed bids will be received;
 (E) The amount, which may be stated in a percentage, of the bid bond required;
 (F) A statement of the taxing unit's reservation of the right to reject any or all bids and to waive any formalities; and *Page 3 
 (G) Such other pertinent facts or information which to it may appear necessary or desirable.
 * * * (d) On the date and time fixed in the notice, the board, commission, officer, or other authority in which or in whom authority is vested to award contracts shall open and compare the bids and thereafter award the contract to the lowest responsible bidder but only if it is the opinion of the authority that the best interests of the taxing unit would be served thereby.
A.C.A. § 22-9-203 (Supp. 2007). See also A.C.A. § 22-9-204 (Repl. 2004) (governing subcontracting).
The General Assembly has expressed its intent for sections 22-9-203
and-204 "to provide a uniform procedure to be followed by all taxing units whenever work is to be done under formal contract." A.C.A. § 22-9-202
(Repl. 2004).[1] As explained by one of my predecessors, the procedure involves the award of a contract to the prime contractor through a low-bid competitive process that includes the county's publication of notice of its intent to receive bids. Op. Att'y Gen. 93-051 (opining that the bidding laws prevent a county from using a so-called "design/build" approach, under which a contracted design/build team would receive bids for the construction work so that the county would not be awarding the contract to the prime contractor). I am unaware of any authority for waiving the competitive bidding requirements where the project is otherwise subject to the public works law. Compare A.C.A. § 19-11-807(a)(1) (Repl. 2007) (authorizing school districts to use a "design-build" project delivery method "without competitive bidding."); A.C.A. § 19-4-1415
(Repl. 2007) (exempting state agency construction projects from A.C.A. §22-9-201 et seq., where the projects exceed $5,000,000, assuming certain procedures are followed.)[2] See also Op. Att'y Gen. 92-246 (opining that a city was required to solicit bids pursuant to A.C.A. § 22-9-203 *Page 4 
for a "turnkey" contract for the design, construction and operation of a wastewater treatment system).[3]
I will note that since the issuance of the Attorney General Opinions noted above, legislation has been enacted to specifically prohibit the use of competitive bidding for "construction management" services. A.C.A. § 19-11-801 (Repl. 2007) (as amended by Acts 2154 and 2155 of 2005). Counties are included within this statute. Id. at (b) ("It is the policy of the State of Arkansas and its political subdivisions that political subdivisions shall follow the procedures stated in this section, except that competitive bidding shall not be used for theprocurement of . . . construction management . . . services.) (Emphasis added). "Construction management" is defined to mean:
 . . . a project delivery method based on an agreement in which a state agency, political subdivision, public school district, or institution of higher education acquires from a construction entity a series of services that include, but are not limited to, design review, scheduling, cost control, value engineering, constructability evaluation, preparation and coordination of bid packages, and construction administration.
Id. at (d)(1).
Some mention should be made of this statute because it includes a project delivery method called "General contractor construction management" that might contemplate waiving bids for construction work. The statute provides in this regard:
"Construction management" includes . . .: *Page 5 
 (C)(i) "General contractor construction management", in which the construction entity, after providing agency services during the preconstruction period, serves as the general contractor.
 (ii) The general contractor shall hold all trade contracts and purchase orders and shall bond and guarantee the project.
Id. at (d)(2).
While it is not entirely clear, by including the "general contractor" within the services to be provided, this subsection might be interpreted as authority to forego competitive bidding for the construction contract. A question arises, however, regarding the subsection's application to counties, given that the two immediately preceding subsections clearly apply only to "public school district[s]." Id. at (d)(2)(A) and (B) (regarding "Agency construction management" and "At-risk construction management" as project delivery methods.)[4] It is appropriate, in light of this ambiguity, to look to the emergency clause of the relevant 2005 enactment in order to determine the legislative intent. See generally Heath v. Westark Poultry ProcessingCorp., 259 Ark. 141, 531 S.W.2d 953 (1976).
Subsection (d) was added to A.C.A. § 19-11-801 by Act 2154 of 2005. The emergency clause to this act states in relevant part: *Page 6 
 It is hereby found and determined by the General Assembly of the State of Arkansas that the Arkansas Supreme Court has determined that current public school facilities in Arkansas are inadequate and inequitable; that the clarification of construction management as a project delivery method will increase the construction options of public schools entering into construction projects to improve their school facilities and assist in the process of improving current school facilities; and that the improvements to public school facilities through the use of construction management will ultimately benefit public school students and the state of Arkansas. . . .
Acts 2005, No. 2165, § 2 (emphasis added).
It seems clear from the emergency clause that subsections (2)(A), (B) and (C) of A.C.A. § 19-11-801(d) are intended to apply to school districts. Indeed, to conclude otherwise would likely render subsection19-11-801(d)(2)(C) constitutionally suspect as applied to counties, in light of Ark. Const. art. 19, § 16's requirement that county contracts be competitively bid. It is of course well established that statutes will be construed as constitutional, if possible. Bunch v. State, 344 Ark. 730,736, 43 S.W.3d 132 (2001); Jones v. State, 333 Ark. 208, 969 S.W.2d 618
(1998). A court will therefore endeavor to avoid a construction of A.C.A. § 19-11-801 that calls the statute's constitutionality into doubt. This lends further support to the conclusion that even assuming subsection 19-11-801(d)(2)(C) contemplates no competitive bidding for "general contractor construction management" services, this does not apply to county contracts that are otherwise subject to the public works law.
As you can see from the above excerpted subsections of A.C.A. § 22-9-203, the requirements under this body of law include the publication of notice, id. at (a)(2) and (c)(1), and the awarding of contracts by a "board, commission, officer, or other authority" of the county, id. at (d). It should perhaps be noted in this regard that a construction manager apparently can perform some preliminary tasks in connection with the bidding, such as the opening and initial comparison of bids. See,e.g., Quality Fixtures v. Multi-Purpose Facilities Board, 337 Ark. 115,120-21, 986 S.W.2d 865 (1999) (concerning the award procedure followed by the Pulaski County Multi-Purpose Facility Board for certain construction work at the Alltel Arena in North Little Rock). Indeed, it will be noted that the "preparation and coordination of bid packages" is included within the "construction management" services set out in A.C.A. §19-11-801(d)(1), supra. But the actual *Page 7 
award decision rests solely with the county, acting through its board, officer, or other authority. See 337 Ark. at 120-121 (distinguishing between the opening of the bids on the one hand — which was handled by the construction manager — and the "analysis, examination, and inspection" of the bids and the awarding of the contract, which could only be performed by the Public Facilities Board.)
In sum, it is my opinion that competitive bidding is required, pursuant to A.C.A. § 22-9-203 and Ark. Const. art. 19, § 16, when a county contracts for the construction or renovation of county public buildings.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Section 22-9-202 recognizes that a county or other taxing unit may use its own employees to make improvements, in which case the bidding requirements are inapplicable.
[2] It bears noting that unlike counties, school districts and state agencies are not subject to a constitutionally-imposed bidding requirement, as there is no provision comparable to Ark. Const. art. 19, § 16, for those government entities. The same goes for municipalities.
[3] The "turnkey" contract involved a package proposal encompassing design, construction and maintenance services. Op. Att'y Gen. 92-246 at 2. In 2003, legislation was enacted to specifically authorize "any municipality or sanitation authority" to award "design-build-operate-maintenance contract[s]" through "competitive sealed proposals" for wastewater treatment, storm water treatment, or water treatment systems. Acts 2003, No. 1297, codified at A.C.A. §22-9-203(j) (Supp. 2007).
[4] These subsections include the following within the term "construction management":
 (A)(i) "Agency construction management", in which a public school district selects a construction manager to serve as an agent for the purpose of providing administration and management services.
 (ii) The construction manager shall not hold subcontracts for the project or provide project bonding for the project;
 (B) "At-risk construction management", in which the construction entity, after providing agency services during the preconstruction period, serves as the general contractor and the following conditions are met:
 (i) The construction manager provides a maximum guaranteed price;
 (ii) The public school district holds all trade contracts and purchase orders; and
 (iii) The portion of the project not covered by the trade contracts is bonded and guaranteed by the construction manager; and. *Page 1